UNITED STATES of America,
Plaintiff–Appellee,

v.

Jeffrey COCHRAN, Steven Corbett, Alexander West, Lavell Cooper, and Donald B. Howell, Defendants–Appellants.

Nos. 90–2114 to 90–2116, 90–2176 and 90–2705.

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1991.*

Decided Feb. 3, 1992.

---

* Appeal No. 90–2705 was submitted for decision without argument. *See* Fed.R.App.P. 34(a); Cir.R. 34(f).

William D. Shaver, Asst. U.S. Atty. (argued), Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, for U.S.

Robert S. Bailey (argued), Chicago, Ill., for Jeffrey Cochran.

JoAnne F. Wolfson, Ross A. Keene (argued), Chicago, Ill., for Steven Corbett.

Stanley L. Hill (argued), Hill & Associates, Chicago, Ill., for Alexander West.

Loraine A. Ray (argued), Chicago, Ill., for Lavell Cooper.

James W. Reilley, Reilley & Associates, Des Plaines, Ill., for Donald B. Howell.

Before BAUER, Chief Judge, WOOD, Jr., and KANNE, Circuit Judges.

BAUER, Chief Judge.

The five appellants in this case lodge a variety of challenges to their convictions for their roles in a cocaine distribution conspiracy. Jeffrey Cochran, Steven Corbett, Alexander West, and Donald Howell were arrested in a McDonald's restaurant parking lot in Chicago after they sold one kilogram of cocaine to undercover Chicago Police and Federal Drug Enforcement Administration ("DEA") agents. Lavell Cooper

was arrested nearby—he was acting as a "lookout" at the time of the cocaine sale.

The defendants were charged in a six-count indictment with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (1989), possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (1989), use of the telephones to aid in drug distribution, in violation of 21 U.S.C. § 843(b) (1989), and use of firearms during the distribution of drugs, in violation of 18 U.S.C. § 924(c)(1) (1989). The defendants were tried together before a jury. Of the defendants, only Cochran testified at the trial.

The jury found all five defendants guilty of conspiring to distribute cocaine. The jury also convicted Corbett, Howell, and Cochran of possession of cocaine and further convicted Corbett and Howell of possessing firearms during a drug transaction. Finally, the jury found Cochran and Cooper guilty of using telephones to further a drug distribution scheme. The district court sentenced the defendants under the United States Sentencing Guidelines ("Guidelines") to the following terms of incarceration: Cochran received two concurrent ten-year terms on the conspiracy and possession convictions; Corbett received concurrent five-year terms on the conspiracy and possession convictions and a consecutive five-year sentence for the use of a firearm; West received five years for conspiring to distribute cocaine; Cooper received five-years and three months for conspiring to distribute cocaine; and, Howell received a three-year sentence for conspiring to distribute cocaine, with a consecutive five-year sentence for the use of a firearm.

## A. FACTS

The appellants' arrests and convictions are the result of two cocaine sales they orchestrated during four days in September 1989. DEA and Chicago Police undercover agents contacted Cochran seeking to purchase three kilograms of cocaine. Cochran agreed to organize the sale and make appropriate arrangements with his drug suppliers. During his first conversation with the undercover agents, Cochran agreed to arrange a one-ounce, $1,000 sample transaction for the following day. The agents agreed that if the cocaine sample proved satisfactory, Cochran would arrange for a three kilogram deal, for $61,000, later that same day. The parties planned to meet the following afternoon in the parking lot of a northside Chicago McDonald's to execute the deal.

The next day, a series of telephone conversations between the undercover agents and Cochran resulted in several changes in the terms of the drug deals. Cochran stated that he would be able to obtain two, not three, kilograms of cocaine and that the transactions had to take place later in the day than originally planned. At the appointed time, the undercover agents met Cochran, who was accompanied by Cooper, at the McDonald's parking lot. Howell arrived a short time later and made the one-ounce sample sale with Cochran and an undercover agent while Cooper stood guard some distance from the others. Howell also discussed a three-kilo deal, but ultimately Howell, Cochran, and the undercover agents agreed to make a one-kilogram cocaine deal the following day.

Both Cochran and Cooper had a number of telephone conversations with an undercover agent the next day as Cochran negotiated numerous changes in the terms of the one-kilogram deal. These changes included raising the amount of the transaction from one to three kilograms and raising the price to $63,000. The parties also agreed to put the transaction off for another day.

In a series of conversations the next day, Cochran and Cooper kept the undercover agent informed about Cochran's progress in obtaining the cocaine and arranging the time of the transaction. Finally, the parties agreed that they would make a one-kilogram exchange at the McDonald's parking lot that day, with the option of an additional two kilogram deal. At the appointed time, Cochran and Cooper met the undercover agents at the McDonald's, where Cochran talked to the agents while Cooper walked along the street as a lookout. Howell arrived a short time later and

spoke with Cochran and the DEA agent. Then, Corbett and West arrived in a third car. Corbett got out of his car, put a black bag on the roof of his car, retrieved a blue bag from a nearby garbage can, put both bags back in the car and drove off. West remained in the passenger seat of the car.

Howell, Cochran, and the DEA agent continued their conversation. When the terms of the deal were settled, Cochran, Howell, and Cooper went down the block to page their suppliers. A short while later, Corbett and West returned, conferred with Howell, Cochran, and Cooper, and left the area again. Corbett and West soon returned to the McDonald's parking lot for a third time. Cochran went to their car and retrieved the blue bag, which he handed to the DEA agents, who determined that it contained cocaine. The agents then arrested Howell, Cochran, Corbett, and West in the parking lot. They arrested Cooper a short distance away inside another restaurant. A search of Corbett and West's car netted a .9mm semiautomatic gun and a .38 special revolver.

## B. ANALYSIS

Each appellant raises an assortment of challenges to his conviction and sentence. Howell's counsel submitted a motion to withdraw, along with a brief supporting his belief that an appeal would be frivolous. *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). We will address the appellants' claims in the order in which they arose before the district court.

### 1. Pre–Trial

#### a. Severance

■ Cooper challenges the district court's denial of his motion for severance, contending that the district court's action prejudiced his defense. Cooper contends that his defense was mutually antagonistic with that of co-defendant Cochran. He also claims that there was a gross disparity in the weight of the evidence against him as opposed to that against his co-defendants. Rule 14 of the Federal Rules of Criminal Procedure permits a district court to conduct separate trials for co-defendants indicted together if either the government or the defendant is prejudiced by joinder. Fed.R.Crim.P. 14. We review a district court's decisions regarding severance for an abuse of discretion. *United States v. Emond*, 935 F.2d 1511, 1514 (7th Cir.1991). Indeed, a defendant must show actual prejudice in order to challenge successfully the district court's refusal to grant a severance. *Id.* at 1514; *United States v. Gonzalez*, 933 F.2d 417, 425 (7th Cir.1991). In other words, a defendant must show that he was unable to obtain a fair trial without the severance. *United States v. Atterson*, 926 F.2d 649, 658 (7th Cir.1991).

■ The district court's refusal to grant a severance did not jeopardize the fairness of Cooper's trial. Although Cooper played a peripheral role in the actual exchange of drugs, the evidence of his co-defendants' participation in the conspiracy did not so overwhelm the evidence against Cooper that severance was required. The evidence indicated that Cooper was involved in numerous telephone conversations with the undercover agents in which he provided updates on Cochran's attempts to obtain the cocaine. Further, although Cooper was not in the parking lot at the time of the drug exchange, he was nearby, and had been present each time Cochran came to the parking lot. Cooper also conferred with at least Cochran and Howell during their visits to the parking lot. We cannot conclude that the evidence against the other defendants was so "far more damaging" than that against Cooper that a severance was required. *See Emond*, 935 F.2d at 1515–16.

Furthermore, the district court gave limiting instructions to the jury directing them to consider the evidence against each defendant individually:

Although the defendants are being tried jointly, you must give separate consideration to each defendant. In doing so you must analyze what the evidence in the case shows with respect to each defendant, leaving out of consideration any evidence admitted solely against some other defendant or defendants. Each de-

fendant is entitled to have his case decided on the evidence and law applicable to him.

(Proceedings at Trial, Vol. 8, February 7, 1990 ("Trial Tr.") at 1219). It is presumed that a jury will follow such instructions and sort the evidence as to each defendant. *Gonzalez,* 933 F.2d at 426. In this case, the district court's instructions were sufficient to counter any potential "spillover effect" of the evidence against Cooper's co-defendants. *See, e.g., United States v. Briscoe,* 896 F.2d 1476, 1517–18 (7th Cir. 1990); *United States v. Diaz,* 876 F.2d 1344, 1358 (7th Cir.1989). Cooper has failed to demonstrate that the evidence against his co-defendants so overwhelmed the jury that they necessarily concluded that he too was guilty, regardless of the evidence against Cooper.

■ In order to show that his defense was mutually antagonistic with Cochran's, Cooper must demonstrate that acceptance of Cochran's defense would preclude his own acquittal. *United States v. McAnderson,* 914 F.2d 934, 949 (7th Cir.1990). Cooper argues that his non-involvement defense was necessarily precluded by Cochran's entrapment defense. We are not persuaded. Cochran claimed that he was entrapped by the government's undercover agents. The jury's acceptance of this theory would not have required them to find Cooper guilty. The jury acquitted Cooper of the possession charges but convicted Cochran of those charges. In fact, the portions of Cochran's testimony cited by Cooper indicate that Cochran attempted to *exculpate* Cooper by stating that Cooper was a "buddy" who was only along for a ride. The district court did not abuse its discretion in denying Cooper's motion for severance.

### b. Additional Peremptory Challenges for Cooper

■ Cooper, whose co-defendants adopted his position, argues that the district court unfairly conducted the jury selection by not granting an unspecified number of additional peremptory challenges to the defendants. The district court granted six peremptory challenges for the government and ten peremptory challenges for the defense, as is required by Rule 24(b) of the Federal Rules of Criminal Procedure. Cooper argues that the district court abused its discretion by not granting additional peremptory challenges because the five defendants had conflicting trial strategies.

Rule 24(b) vests the district court with discretion to grant additional peremptory challenges or to permit co-defendants to exercise their peremptory challenges separately or jointly, "if there is more than one defendant...." Fed.R.Crim.P. 24(b). The decision whether to grant additional peremptory challenges in multi-defendant trials, therefore, lies within the sound discretion of the district court. *United States v. Farmer,* 924 F.2d 647, 653 (7th Cir.1991). We conclude that the district court did not abuse that discretion by refusing to grant additional challenges to the defendants in this case.

### 2. Trial

#### a. Sufficiency of the Evidence

■ Cooper, West, and Corbett each argue that the evidence introduced at trial was insufficient to convict them of knowing participation in a conspiracy to distribute cocaine. They argue that mere presence at the scene of a crime is insufficient to establish their participation in the crime. The three appellants contend that the government failed to introduce evidence beyond their mere presence in or near the McDonald's parking lot on September 14, 1989. (Cooper concedes, however, that he was also present in the same parking lot on September 13, 1989.) According to the appellants, a rational jury could not conclude, beyond a reasonable doubt, based on their mere presence at the scene that they conspired to possess and distribute cocaine.

When a criminal conviction is challenged on the basis of the sufficiency of the evidence, we review the evidence in a light most favorable to the government and will reverse a conviction only if no rational trier of fact could have found the essential elements of the offense beyond a reasonable

doubt. *United States v. Morrison*, 946 F.2d 484, 491–92 (7th Cir.1991); *United States v. Scop*, 940 F.2d 1004, 1011 (7th Cir.1991). Viewing the evidence in a light most favorable to the government, we conclude that neither Cooper, Corbett, nor West has sustained his heavy burden of proving that no rational trier of fact could conclude that he knowingly intended to join a conspiracy to distribute cocaine. *See United States v. Scroggins*, 939 F.2d 416, 421 (7th Cir.1991). The government introduced three taped conversations between a DEA agent and Cooper, where Cooper referred to Cochran's negotiations with the undercover agents and his suppliers and discussed the amount of cocaine to be sold. Trial Tr. at 117–118; 134–135; 144–145. Agents testified that Cooper arrived at the parking lot each time Cochran met with the undercover agents, Trial Tr. at 89–91; 341–42; 373–74, and walked back and forth along the perimeter of the parking lot while Cochran negotiated with the agents. Trial Tr. at 158; 379; 436. Further, the evidence indicated that Cooper went with Cochran and Howell to page the individuals who had the cocaine for the one-kilo deal. Trial Tr. at 159–160; 384. Based on this evidence, a rational trier of fact could have concluded that Cooper was a knowing participant in a conspiracy to distribute cocaine to the undercover agents.

As to Corbett and West, the evidence introduced at trial indicated that the two were in the McDonald's parking lot on three occasions on September 14, 1989. On each occasion, Corbett was driving and West was a passenger in the car. Government witnesses testified that on their first visit to the parking lot, Corbett got out of the car, put a black bag on the car's roof, and retrieved a blue bag from a dumpster at the edge of the parking lot before leaving the area. *See* Trial Tr. at 380–81; 438–39. They later returned and were observed, by DEA agents at the scene, talking to Howell. *Id.* at 160–61; 494–96. During Corbett and West's third visit to the McDonald's parking lot, Cochran went to their car, reached in the passenger window and retrieved the blue bag which contained the cocaine. *Id.* at 165; 495.

Again, based on this information, a rational trier of fact could conclude that Corbett and West knowingly conspired to obtain and distribute cocaine.

### b. Entrapment Defense

■ Cochran complains that the district court's rulings hampered his efforts to present an effective entrapment defense. Specifically, he argues that the district court's refusal to call two confidential informants, Matt Jones and Martin O'Sheilds, as court's witnesses, together with its ruling barring Cochran from commenting on their absence, frustrated the presentation of Cochran's entrapment defense. Cochran also complains about the district court's refusal to tender a missing witness instruction to the jury.

Rule 614 of the Federal Rules of Evidence allows the trial court, in its discretion or upon motion of either party, to call a witness during trial. Fed.R.Evid. 614. Only upon the showing of an abuse of discretion will the court's decision not to call a witness be the basis for a reversal. *See United States v. Kenny*, 645 F.2d 1323, 1348 (9th Cir.1981). Although authorized by the Federal Rules of Evidence, the use of a court's witness is rare. We are unable to find, and counsel has not cited, a single example of a reversal because of a trial court's decision not to call a witness for the court.

In the case at bar, we need not alter that pattern. The trial judge reasoned that the witnesses at issue were available to either Cochran or the government. Indeed, the court noted that Cochran could have issued subpoenas to both "missing witnesses." *See* Trial Tr. at 1035, 1083. In addition, Cochran did not make his request to the court until after the government presented both its case in chief and its rebuttal. Thus, the district court had the full record of Cochran's and the government's proffered evidence at the time it considered whether to call Jones and O'Sheilds as court's witnesses. The district court noted that Cochran had not availed himself of the opportunity to call Jones or O'Sheilds during his presentation of his case. Based

upon this evidence, the court concluded that Cochran had introduced the elements of an entrapment defense and raised the issue to the jury. In reaching this conclusion the district court did not abuse its discretion.

■ Cochran contends that the district court's prohibition of comments during closing arguments, by either party, on the absence of testimony from Jones or O'Sheilds, further frustrated his attempts to present an entrapment defense. Again, the district court did not abuse its discretion in prohibiting discussion of missing witnesses during closing arguments. Because the court determined that Jones and O'Sheilds were equally available to either party, it was appropriate not to allow either party to comment on the absent witnesses. *See* Trial Tr. at 1080–83. This conclusion is plainly consistent with our directives in *United States v. Sblendorio*, 830 F.2d 1382, 1393 (7th Cir.1987).

### c. Various Jury Instructions

Cochran and West challenge the district court's decision not to include certain jury instructions during its charge to the jury. Cochran disputes its refusal to tender a missing witness instruction while West contests the district court's refusal to instruct the jury that his mere presence was insufficient to prove his participation in the conspiracy.[1] We review the district court's charge to the jury as a whole. *United States v. Ruiz*, 932 F.2d 1174, 1179 (7th Cir.1991). We will not overturn a verdict based on a challenge to specific jury instructions, "as long as the instructions treat the issue fairly and adequately." *Id.* (quoting *United States v. McNeese*, 901 F.2d 585, 607 (7th Cir.1990)).

### I. Mere Presence Instruction

■ West challenges the district court's modification of the Seventh Circuit Pattern Jury Instruction No. 3.04, claiming that the modification allowed the jury to conclude that circumstantial evidence alone was suf-

ficient to convict West. The district court gave the following instruction:

> Mere presence at the scene of the crime or mere association with the conspirators will not themselves support a conspiracy conviction. <u>Presence or a single act will suffice if the circumstances permit the inference that the presence or act was intended to advance the conspiracy.</u> Mere presence at the scene of the crime and knowledge that a crime is being committed are also not sufficient to establish a defendant's guilt of other crimes that are charged.

(modification underlined.) We have stated on numerous occasions that the challenged sentence is an accurate reflection of the law. *See, e.g., United States v. Simone*, 931 F.2d 1186, 1193 (7th Cir.1991); *United States v. Caliendo*, 910 F.2d 429, 438 (7th Cir.1990); *United States v. Binkley*, 903 F.2d 1130, 1134 (7th Cir.1990). Furthermore, this instruction was accompanied by other instructions on the law of conspiracy that made it clear that the evidence must show that West knowingly joined the conspiracy. No error resulted from adding the sentence to the pattern jury instruction.

### II. Missing Witness Instruction

■ In order to challenge successfully the district court's refusal to tender a missing witness instruction, Cochran must show that the witness was under the power of the government and that the missing witness' testimony would have been helpful, that is, both relevant and non-duplicative. *United States v. Romo*, 914 F.2d 889, 893 (7th Cir.1990). Cochran attempts to meet this standard by arguing that confidential informants Jones and O'Sheilds were peculiarly within the control of the government and, therefore, constructively unavailable to the defense. Contrary to this contention, the district court observed that both Jones and O'Sheilds were in the building where the trial was conducted and that Cochran had not attempted to subpoena either witness. It concluded that either

---

1. Corbett and Cooper adopt by reference West's argument that the jury instructions erroneously directed the jury that their mere presence at the scene of the cocaine sale was sufficient to convict them of participation in the conspiracy.

party was free to subpoena Jones or O'Sheilds and that Cochran failed to prove that the witnesses were unavailable. *See* Trial Tr. at 1035, 1083. Cochran has not provided any facts that show that the witnesses were unavailable to him. *See United States v. Rollins*, 862 F.2d 1282, 1298 (7th Cir.1988) (witness' status as government informant does not establish unavailability to testify for defense).

Cochran also fails to demonstrate that Jones' or O'Sheilds' testimony would have been helpful to the jury. In fact, in his brief on appeal, Cochran concedes that he does not know what information Jones or O'Sheilds could have provided to the jury. Cochran Brief at 18. The refusal to give the instruction was not error.

3. Sentencing

The appellants were sentenced pursuant to the Guidelines. Because they were sentenced in May 1990, the Guidelines in effect at the time of their sentencing included only those amendments enacted as of November 1, 1989. Each appellant challenges the district court's determination of the amount of cocaine involved in the offense, which affects the base level offense calculation under Guidelines Section 2D1.1. They contend that the district court erred in including the full three kilos of cocaine discussed among the parties in its calculation, rather than the one kilo and one ounce actually delivered.

■■■ Section 2D1.4 directs that the offense level "shall be the same as if the object of the conspiracy ... had been completed." The amount of drugs involved in a conspiracy is a factual question to be determined by the sentencing court. We will overturn a court's factual determination only if it is clearly erroneous. *United States v. Welch*, 945 F.2d 1378, 1384 (7th Cir.1991); *United States v. Hassan*, 927 F.2d 303, 306 (7th Cir.1991). A defendant is responsible for the amount of drugs that he knew, or should reasonably have foreseen, was the object of the conspiracy. Guidelines Section 2D1.4, Application Note 1; *United States v. Osborne*, 931 F.2d 1139, 1150 (7th Cir.1991).

■■■ The district court concluded that the object of the conspiracy was to distribute three kilos of cocaine. In reaching this conclusion, he noted the numerous conversations addressing efforts to obtain three kilos of cocaine as well as Cochran's speculation that he could obtain the next two kilos within a few days after the one kilo delivery. Further, the district court based its conclusion on the defendants' facile use of drug terminology and the ease with which they obtained the quantity they actually delivered. Proceedings at Sentencing Hearing, Vol. 11, May 11, 1990 ("Sentencing Tr.") at 1297–98.

Cooper specifically argues that the three kilo transaction was not reasonably foreseeable. The evidence before the sentencing court, however, included taped conversations in which Cooper indicated his understanding that Cochran was attempting to obtain up to three kilos of cocaine from Howell. The conclusion that a three kilo transaction was reasonably foreseeable to Cooper is not clearly erroneous.

Cochran also challenges two enhancements to his base offense level: a two-level enhancement for his role in the offense, and a two-level enhancement for obstruction of justice. Neither challenge merits a remand for resentencing because the district court correctly included both enhancements in calculating Cochran's offense level. Again, we will reverse the district court's findings of fact regarding these enhancements only if they are clearly erroneous. *United States v. Fairchild*, 940 F.2d 261, 265 (7th Cir.1991).

■■■ Guidelines Section 3B1.1(c) provides for a two-level enhancement if the defendant acts as an organizer, leader, manager, or supervisor. *See, United States v. Welch*, 945 F.2d at 1385–86; *United States v. Ramos*, 932 F.2d 611, 618 (7th Cir 1991). The district court concluded that Cochran acted as an organizer because he played a central role in coordinating the five individuals who worked together to supply the cocaine. The evidence showed that Cochran was the key figure linking supplier Howell with the undercover pur-

chasers. He was at each of the meetings where the drug deals were planned; his home was the contact location; and he was present at each transaction. The record amply supports a two-level enhancement for Cochran's leadership role in the conspiracy.

■ A defendant's offense level can be increased if the district court determines that he "willfully obstructed or impeded ... the administration of justice...." § 3C1.1. We respect the trial court's factual determinations related to witness credibility unless they are clearly erroneous. *United States v. Barnett*, 939 F.2d 405, 408 (7th Cir.1991); *United States v. Hassan*, 927 F.2d 303, 309 (7th Cir.1991). Although a defendant's denial of guilt does not warrant a two-level enhancement for obstruction of justice, *see United States v. Fiala*, 929 F.2d 285, 289–90 (7th Cir.1991), false testimony under oath does support such a two-level enhancement. *Barnett*, 939 F.2d at 408. In imposing the sentence, the district court judge stated, "I do believe [Cochran] lied on essential evidentiary matters." *See* Sentencing Tr. at 1299. We will not disturb the district court's determination that Cochran testified falsely at the trial. *Id.; United States v. Cherry*, 938 F.2d 748, 758 (7th Cir.1991). Cochran did not simply deny his guilt, he chose to take the stand and tell his story. The district court concluded that because Cochran lied about relevant facts at trial, it had sufficient support to include a two-level enhancement for obstructing justice. *See, United States v. Contreras*, 937 F.2d 1191, 1194 (7th Cir.1991) (denial of guilt alone not basis for obstruction of justice enhancement).

### 4. *Anders* Brief for Howell

Howell's counsel on appeal has moved to withdraw on the grounds that an appeal would be frivolous. He filed a brief along with his motion outlining the issues that in his professional judgment might conceivably be the basis of an appeal in accordance with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *United States v. Edwards*, 777 F.2d 364 (7th Cir.1985). Howell received notice of his counsel's filing and submitted a response pursuant to Circuit Rule of Appellate Procedure 51(a), arguing that an appeal of his conviction for the possession of a firearm would not be frivolous.

■ Howell argues that there was insufficient evidence to indicate that he had any knowledge of the guns contained in Corbett and West's car. This contention is not supported by the record. The undercover agent testified that during the one-kilo exchange, Howell said that he did not have a gun, although his "protection" was armed. Furthermore, a taped conversation between the undercover agent and Cooper discussed an adjustment in the price of the cocaine due to Howell's need to get extra protection for the transaction. *See* Trial Tr. at 106, 111. Based on this information, a reasonable jury could have concluded that Howell knew that Corbett and West had guns in their car. In addition, there is no question that co-conspirators can be held liable for the actions of an accomplice. *United States v. Elizondo*, 920 F.2d 1308, 1316–17 (7th Cir.1990). Because Corbett, West, and Howell were all found guilty of conspiring together to distribute cocaine, each may be held liable for the acts of the others. Thus, Howell was properly held liable for the firearms violation of his co-conspirators.

In the *Anders* brief, Howell's counsel suggested that a challenge to the denial of Howell's request for severance might be an appealable issue. Although we cannot conclude that this challenge is frivolous, our discussion of the issue above indicates that Howell could not show that the trial court abused its discretion by failing to sever the defendants' trial. *See supra* at 1120–21. It is well within the discretion of the district court to deny a motion to sever and we will not reverse such a determination absent a showing of actual prejudice. Howell's counsel has properly determined that this issue alone does not merit an appeal.[2]

2. In his response, Howell specifically states that he does not wish to appeal his conviction on

## C. CONCLUSION

For the foregoing reasons, the convictions and sentences of Cochran, Corbett, West, and Cooper in this consolidated appeal are AFFIRMED. Furthermore, Howell's counsel's motion to withdraw is GRANTED and his appeal is DISMISSED.

any count of the indictment other than that for firearms possession. Thus, he apparently conceded the nonappealability of any other issues raised by his counsel on appeal. Therefore, Howell has waived any potential appeal of any issue other than that pertaining to his firearms conviction. Fed.R.App.P. 28(a)(4); *Deeming v. American Standard, Inc.,* 905 F.2d 1124, 1129 (7th Cir.1990).