986 F.2d 1425
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joel L. KELLEY, Defendant-Appellant.
 No. 92-2162.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 3, 1993.*
Decided Feb. 19, 1993.
 
 Before COFFEY, FLAUM and ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 A jury convicted Joel L. Kelly of conspiracy to distribute in excess of 1,000 kilograms of marijuana, a violation of 21 U.S.C. §§ 841(a)(1) and 846.
 
 
 2
 At sentencing, the judge determined that Kelley should actually be held accountable for 7,980 pounds (3,615 kilograms) of marijuana. This resulted in a base offense level of 34. U.S.S.G. § 2D1.1 Table. In arriving at the 7,980-pound figure, the sentencing judge relied largely on one witness's estimates of the amount of marijuana Kelley sold to him. In this appeal, Kelley challenges the sufficiency of the evidence to support the judge's finding that Kelley should be held accountable for 7,980 pounds of marijuana.
 
 
 3
 The sentencing judge also increased Kelley's base offense level because of Kelley's role in the offense. The judge found that Kelley was a manager or supervisor whose criminal activity warranted an increase of the offense level by three. U.S.S.G. § 3B1.1(b). Kelley claims on appeal that the evidence was insufficient to support this finding.
 
 I.
 
 4
 "The amount of drugs involved in a conspiracy is a factual determination by the sentencing court which we review for clear error only." United States v. Campbell, No. 89-2121, slip op. at 7 (7th Cir. February 8, 1993); accord United States v. Hoffman, 957 F.2d 296, 300 (7th Cir.), cert. denied, 112 S.Ct. 2315 (1992); United States v. Cochran, 955 F.2d 1116, 1124 (7th Cir.), cert. denied, 113 S.Ct. 460 (1992). This determination is made based on a preponderance of the evidence. United States v. Schuster, 948 F.2d 313, 315 (7th Cir.1991). In addition, " '[w]e defer to the [sentencing] court's ... credibility determinations unless they are without support in the record." United States v. Beal, 960 F.2d 629, 634 (7th Cir.) (quoting United States v. Brown, 944 F.2d 1377, 1379 (7th Cir.1991)), cert. denied, 113 S.Ct. 230 (1992). A factual determination is clearly erroneous " 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " United States v. Sanchez, No. 91-1707, 1993 U.S.App. LEXIS 294 *14-15 (7th Cir. Jan. 12, 1992) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).
 
 
 5
 In determining the amount of drugs involved, the sentencing court limited its findings to those amounts that related directly to Kelley, Disp. II 16-17,[1] even though Kelley is legally liable for the total amount of drugs in which the conspiracy dealt while he was a part of it. As we stated in United States v. Morrison, 946 F.2d 484, 501 (7th Cir.1991), "[t]hose convicted of conspiring to violate the drug laws are criminally responsible for the total quantity of drugs in which the conspiracy they joined can reasonably be estimated to have dealt." Whether or not personally involved in each transaction, a conspirator will be held liable for the quantity of drugs agreed to be distributed which was "reasonably foreseeable by the defendant." See U.S.S.G. § 1B1.3, application note 1 (1991); United States v. Thompson, 944 F.2d 1331, 1344 (7th Cir.1991), cert. denied, 112 S.Ct. 1177 (1992); United States v. Scroggins, 939 F.2d 416, 422-23 (7th Cir.1991); United States v. Osborne, 931 F.2d 1139, 1150 (7th Cir.1991).
 
 
 6
 The record amply supports the sentencing court's findings. Jerry Carter testified at the sentencing hearing that in his estimation he received about 8,000 pounds of marijuana from Kelley, give or take 1,500 pounds. Disp. I 21. He testified that he received 20 or 30 pounds two or three times a week in 1986, and 50 to 100 pounds two or three times a week from mid 1987 to the latter part of 1988. Disp. I. 9-10 & 16. He also indicated that Kelley delivered 20 pounds to his roommate in 1985. Disp. I. 7, 40-41. Using the lowest estimates, this works out to 7,020 pounds. Other witnesses testified at the hearing and at trial to additional quantities sufficient to support the judge's figure of 7,980 pounds of marijuana. Disp. I. 66-67, Tr. II 82.
 
 
 7
 Kelley argues that Carter's testimony was insufficiently reliable for the sentencing judge to base his decision on it. He claims it lacked sufficient reliability because, with one exception, Kelley could not recall with any specificity the dates or amounts of Kelley's deliveries.[2]
 
 
 8
 In support of this argument, he cites United States v. Phillipi, 911 F.2d 149 (8th Cir.1990), cert. denied, 111 S.Ct. 702 (1991). In Phillipi, the defendant had been convicted of possession with intent to distribute cocaine. The Eighth Circuit found that the district court had erred by including certain earlier transactions in the amount for which the defendant was accountable. The testimony concerning the transactions did not clearly establish either the dates on which the deliveries were made or the amounts of cocaine delivered. Id. at 151.
 
 
 9
 We do not find Phillipi persuasive in this case. The dates were important in Phillipi because there was a question of whether the earlier transactions were "part of the same course or conduct or part of a common scheme or plan as the count of conviction." Id. (citing U.S.S.G. § 1B1.3(a)(1) on "relevant conduct"). In this case, precise dates are less important because Kelley was convicted of conspiracy, and it is clear that Kelley's deliveries to Carter were part of the conspiracy for which he was convicted. As for the amounts of marijuana, we note that Carter had significant experience dealing with large quantities of marijuana. Disp. I 8-17. We find that it was reasonable for the sentencing court to rely on Carter's estimates, which were in terms of pounds per delivery and deliveries per week. The court did not err in relying on Carter's testimony.
 
 II.
 
 10
 Kelley challenges the sentencing judge's finding that Kelley deserved a three-level increase in his offense level for being a supervisor or manager. U.S.S.G. § 3B1.1(b).[3] He claims that he "was merely a middleman" in a chain of distribution. Defendant's Br. 14. We will defer to a sentencing court's determination that a defendant was a manager or supervisor unless that determination is clearly erroneous. United States v. Brown, 944 F.2d 1377, 1379 (7th Cir.1991).
 
 
 11
 Kelley correctly points out that merely being a middleman does not warrant an increase under § 3B1.1 for being a supervisor, manager, or leader; in general, "[s]ection 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control, influence or leadership." Id. at 1385. For guidance, we have looked to a number of factors, including
 
 
 12
 the exercise of decision making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 13
 Section 3B1.1 application note 3. Although application note 3 mentions these factors as aids in distinguishing a leadership or organizational role from a managerial or supervisory role, we have found that these factors are likewise useful in determining whether a defendant qualifies as a manager or supervisor at all. Brown, 944 U.S. at 1380 n. 1; United States v. Ramos, 932 F.2d 611, 618 n. 14 (7th Cir.1991).
 
 
 14
 Considering these factors in light of the evidence adduced at trial and at the sentencing hearings, we find the evidence sufficient to support the sentencing judge's decision to increase Kelley's offense level under § 3B1.1(b). To appreciate Kelley's role in the offense, it is helpful to consider the nature of the conspiracy of which he was a part. To begin with, the conspiracy (known as "the Dean organization," named after its leader, Roy Dean) was long-lasting and extensive in scope. Dean's organization was involved in marijuana trafficking from the early 1980s until 1990. Tr. IV 78, Tr. II 75, 189-191. Kelley became involved in the Dean organization no later than 1986, Disp. I 8-10, and by late 1987 he was a major figure in the organization, Tr. III 80-81. The Dean organization acquired marijuana in Texas and shipped it by car, truck, and airplane to southern Illinois. Tr. I 24-27; Tr. II 23. From there, it was distributed to a number of different areas for resale, including Rockford, Illinois, Tr. II 25-27, 90-91, East St. Louis, Illinois, Tr. I 81, Kansas City, Missouri, id., southern Wisconsin, Tr. II 129, and even Florida, Tr. II 166-69.
 
 
 15
 Until late 1987, Sammy Dean was in charge of the Rockford area for the Dean organization. Sammy Dean's responsibilities included hiring decisions and maintaining the records for the Rockford area. Disp. I 60-61. After Sammy Dean departed, there is considerable evidence that Kelley replaced him. Id. at 47, 88. In the words of Roy Dean's wife, Pamela Culbreth, Kelley "would take care of all of Rockford and he would just report to Roy." Tr. IV 88. Kelley argues that, when pressed on cross examination, Culbreth admitted that Kelley was simply buying marijuana from Roy Dean and selling it in the Rockford area, i.e., that Kelley was simply a middle man. Defendant's Br. 16-17 (citing Disp. I 58). We note that Kelley's attorney did not ask Culbreth whether Kelley planned or organized the distribution of the marijuana, directed others, or anything else potentially relevant to the issue of whether he was a manager or supervisor. The questions put to Culbreth on cross-examination were very general in nature, and we believe that Culbreth was merely describing Kelley's overall function, which of course was to buy marijuana and resell it for a profit. The question is whether, in doing so, he served in a managerial or supervisory capacity.
 
 
 16
 Because there were other members of the Dean organization in Rockford, Disp. I 47-48, the fact that Kelley was in charge of Rockford suggests that he was in charge of those individuals as well. Moreover, given the size of the Dean organization, it is reasonable to assume that Kelley took on significant managerial or supervisory responsibilities within the Dean organization when he replaced Sammy Dean. Yet we need not rely on mere assumptions to conclude that Kelley served in a managerial or supervisory role. There was testimony that some of the drivers hauling marijuana worked for Kelley. Disp. I 90-91. Kelley kept records on the amount of cocaine coming to the Rockford area through the Dean organization, and he met with other high-level members of the organization to try to resolve a discrepancy in their respective records. Disp. I 88-89. In addition, there was testimony that Kelley recruited Carter to sell drugs for him, Disp. I 11, and he lined up a customer for another member of the Dean organization, Tr. II 94.
 
 
 17
 Based on all of the above, we cannot say that the sentencing judge's finding that Kelley was a manager or supervisor under § 3B1.1(b) was clearly erroneous.
 
 III.
 
 18
 For the foregoing reasons, the sentence of Joel Kelley is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 We follow the parties' abbreviations for citing to various parts of the record. "Disp. I" will refer to the first sentencing hearing (referred to as a "disposition"), held on April 24, 1992. "Disp. II" will refer to the final sentencing hearing, held on May 1, 1992. The trial transcripts will be cited as "Tr." followed by the volume number
 
 
 [2]
 Kelley challenges the reliability of Carter's testimony on several other grounds. First, he argues that some of it was hearsay. Very little of the marijuana attributed to Kelley was attributed to him through hearsay testimony, but regardless, a sentencing judge is permitted to rely on such testimony in arriving at the amount of drugs. See United States v. Beal, 960 F.2d 629, 634 (7th Cir.), cert. denied, 113 S.Ct. 230 (1992). Furthermore, he suggests that Carter's drug use rendered his memory unreliable. However, Carter testified that he always took care of business each day before using cocaine. Disp. I 37-38. Thus, the sentencing judge did not clearly err by crediting Carter's testimony
 
 
 [3]
 If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase [the offense level] by 3 levels