79 F.3d 1150
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Troy Lamont BIBB, Anthony L. Vaughn, Eddie D. Gregory,
Robert Lee Bryant, and Porter Brian Tapps,
Defendants-Appellants.
 Nos. 95-1155, 95-1242, 95-1244, 95-1516 and 95-2434.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 16, 1996.
Decided March 6, 1996.
 
 Before EASTERBROOK, RIPPLE and EVANS, Circuit Judges.
 
 Order
 
 1
 Seven accused participants in the drug distribution network run by Thomas Lee Ridley III pleaded guilty; ten more were tried in two groups. United States v. Duff, No. 94-4002 (Jan. 29, 1996), affirmed convictions of Ridley and some of his major confederates. Five mid-level distributors were tried and convicted in a second trial of conspiring to distribute cocaine base; we have consolidated their appeals.
 
 
 2
 Followers in the Ridley organization were not pikers; the organization distributed large quantities for years (at its peak, the Ridley organization handled more than 30 kilograms of cocaine monthly). Each of the five was held accountable for at least 1.5 kilograms of crack cocaine. In light of the defendants' criminal history and other aggravating factors, their sentences are severe: 440 months for Troy Bibb, 330 months for Anthony Vaughn, 480 months for Eddie Gregory, 490 months for Robert Bryant, and 450 months for Porter Tapps.
 
 
 3
 1. Bibb, Bryant, and Tapps contend that the evidence does not support their convictions for conspiracy. Their contentions are variants of the jury instruction arguments we addressed in Duff. Those defendants argued that the jury should have been instructed that, unless they joined exactly the conspiracy alleged in the indictment, they were entitled to be acquitted. We disagreed because a variance between the indictment and the proof is not fatal. Conspiracies may be organized into cells, and the fact that members of one cell do not deal directly with (or even know the identities of) members in another cell does not prevent conviction. Bibb, Bryant, and Tapps make the same style of argument by contending that they did not know all of the other conspirators, that they did not participate for the entire duration of the conspiracy, and so on. (Bibb, for example, was in prison until March 1993 on other charges, and the conspiracy ended that fall, so his participation was necessarily abbreviated.)
 
 
 4
 Proof in this case came from eyewitness testimony (including testimony of the defendants' former confederates), photographs, and wiretaps, as well as from controlled purchases of drugs and seizures at the time of arrest. The jury was entitled to credit this evidence and to conclude that Bibb, Bryant, and Tapps were distributors in the Ridley organization (which is to say that they obtained cocaine from higher-ups, sometimes cooking cocaine hydrochloride into crack, and resold the drug themselves and through their own sub-distributors). They used the Ridley organization's principal marketing sites in Indianapolis, and Bibb participated in the group's market-extension activity in Louisville. Whether they were sufficiently integrated into the organization to support a conclusion that they joined the large-scale conspiracy charged in the indictment was a question for the jury. See United States v. Lechuga, 994 F.2d 346 (7th Cir.1993) (en banc).
 
 
 5
 2. Four defendants contend that the district judge abused his discretion by limiting them to the 10 peremptory challenges provided by Fed.R.Crim.P. 24(b). The last sentence of this rule reads: "If there is more than one defendant, the court may allow the defendants additional peremptory challenges and permit them to be exercised separately or jointly." The judge should have done so here, the defendants insist, because of publicity (including political campaigns) in Indianapolis reflecting antipathy to drug distribution and associated violence (including several murders) by the "Getto Boys" [sic], an arm of the Black Gangster Disciple Nation street gang. The four defendants who belonged to this gang feared that jurors would be influenced by the publicity.
 
 
 6
 Peremptory challenges are designed to allow litigants to remove biased or slanted jurors whose leanings are not so serious as to amount to "cause" for removal. If the goal of impartiality can be achieved in another way, there is no (constitutional) obligation to allow even a single peremptory challenge. Mu'min v. Virginia, 500 U.S. 415, 424-25 (1991). The district court conducted extensive screening of the jurors and excused those who showed even the slightest effect of publicity. Indeed, the judge excused all those about whom any of the defendants expressed any concern. It is therefore unclear what they would have done with additional peremptory challenges. The defendants do not identify a single juror who in their opinion could and should have been excused by an extra peremptory challenge. We therefore conclude that the district court did not abuse its discretion (the applicable standard, see United States v. Cochran, 955 F.2d 1116, 1121 (7th Cir.1992)). The defendants had a fair trial before an unbiased jury. Watson v. Camp, 848 F.2d 89, 91 (7th Cir.1988).
 
 
 7
 This analysis also shows that the district judge did not abuse his discretion by denying the defendants' motion, on the first day of trial, for a lengthy continuance until after the next elections in Indiana. The point of this request was to reduce the influence of publicity contemporaneous with the trial. The district court's questioning and exceptional willingness to excuse members of the venire achieved this end. There was no need for delay, which would have inconvenienced the many witnesses assembled for the trial.
 
 
 8
 3. Tapps contends that his trial counsel rendered ineffective assistance. In part this argument reflects a belief that strategic disagreements or personal antagonism between lawyer and client always amount to ineffective assistance, which they do not. Morris v. Slappy, 461 U.S. 1 (1983). To the extent Tapps questions particular shortcomings (such as the inability to elicit favorable evidence from particular witnesses), it is a futile point to advance on direct appeal--as Tapps belatedly recognized. Two weeks after oral argument, he moved to withdraw the issue from consideration, so that it could be raised by petition under 28 U.S.C. § 2255 if a more adequate record could be assembled. This motion is granted.
 
 
 9
 4. Bibb, the non-member of the Getto Boys, asked for a separate trial. The district judge denied this motion, and we conclude that this was not an abuse of discretion under the standards of Zafiro v. United States, 506 U.S. 534 (1993). Given the district judge's preliminary finding that Bibb was a member of the conspiracy, see United States v. Martinez de Ortiz, 907 F.2d 629 (7th Cir.1990) (en banc), almost all of the evidence would have been admissible in a separate trial. The defenses were not antagonistic. A joint trial may even have offered Bibb some advantages, by enabling him to depict himself as a peripheral figure who did not join the larger conspiracy charged in the indictment and exemplified by the other four defendants. The argument that evidence about one defendant has "spillover effects" is generic; Bibb does not establish that this effect differed at his trial in any material way from the many other multi-defendant cases in which it has been deemed insufficient to compel severance.
 
 
 10
 5. Each defendant believes that his sentence is excessive.
 
 
 11
 a. Tapps offers several objections to the 100-to-1 ratio between cocaine base (crack) and cocaine hydrochloride in the statute and the Sentencing Guidelines. These have been dealt with in earlier opinions, and further discussion is unnecessary. E.g., United States v. Booker, 70 F.3d 488 (7th Cir.1995); United States v. Lawrence, 951 F.2d 751, 754-56 (7th Cir.1991).
 
 
 12
 b. When determining the quantity of cocaine for which each defendant is accountable, the district judge considered only the amount each one distributed (or the distribution of which he supervised). This necessarily involves some imprecision. The judge used the conspiracy's own records, plus testimony and wiretap evidence, to estimate the amount distributed at each of the conspiracy's favorite locations each day. Then the judge estimated the number of days each defendant was responsible for the operation at that location.
 
 
 13
 Defendants insist that they should be held accountable only for the amount that they sold to informants or agents, plus the amount they possessed when apprehended. Yet that would be an absurd way to determine the seriousness of a person's role in a long-running drug conspiracy. Drugs sold to federal agents are not a social problem; it is the sale of drugs to the populace that makes these persons dangerous. That danger (and thus the sentence under the Guidelines) varies with total sales, and to make the punishment proportional to the harm (and comparable across similar cases), judges must try to estimate the total entailed in the same agreement or course of conduct. See United States v. Mumford, 25 F.3d 461, 465 (7th Cir.1994).
 
 
 14
 Estimates are imprecise, as the district judge recognized. He dealt with this by being conservative. For example, although evidence would have supported a conclusion that the defendants distributed drugs daily, the judge assumed that they participated less than half of the time. The judge reduced estimates of daily sales below what the evidence would have justified. These adjustments were sufficient to protect the defendants' interests. What is more, for Bryant and Gregory any quantity exceeding 500 grams of crack would have produced the same ultimate sentencing range. Both defendants were accountable for that quantity by any reasonable method of estimation.
 
 
 15
 c. Because the district judge held each defendant accountable only for drugs he distributed (or of which he supervised the distribution), none is entitled to a reduction under U.S.S.G § 3B1.2. None was a minor or minimal participant in relation to the quantities for which he has been held accountable. See United States v. Burnett, 66 F.3d 137, 140 (7th Cir.1995); United States v. Willis, 49 F.3d 1271, 1275 (7th Cir.1995).
 
 
 16
 d. Bryant kept a shotgun at his apartment, where cocaine was delivered and proceeds collected. The district judge enhanced his offense seriousness by two levels on this account. The decision is not clearly erroneous. Under U.S.S.G. § 2D1.1(b)(1) and Application Note 3, the increase is mandatory "unless it is clearly improbable that the weapon was connected with the offense." This shotgun does not fit that exception.
 
 
 17
 Remaining contentions do not require separate discussion.
 
 
 18
 AFFIRMED.