**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Martin John TOMASIAN and Peter
Basile, Defendants-Appellants.**

**Nos. 84–1229, 84–1374.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 14, 1984.
Decided Feb. 25, 1986.

John J. Scully, U.S. Dept. of Justice, Chicago Strike Force, Chicago, Ill., for defendants-appellants.

Patrick A. Tuite, Chicago, Ill., for plaintiff-appellee.

Before BAUER and COFFEY, Circuit Judges, and DOYLE, Senior District Judge.*

* The Honorable James E. Doyle, Senior District Judge for the Western District of Wisconsin, is sitting by designation.

BAUER, Circuit Judge.

Co-defendants, Peter Basile and Martin Tomasian, appeal their criminal convictions arising out of the interstate transportation and possession of stolen goods. Basile was convicted of interstate transportation of stolen property in violation of 18 U.S.C. § 2314. Tomasian was convicted in the same jury trial of receiving the stolen property in violation of 18 U.S.C. § 2315.

On appeal, Basile challenges the admission of evidence of his prior crimes and the exclusion of a proffered expert witness. Tomasian challenges the sufficiency of the evidence supporting his conviction. We affirm.

I.

In mid-September 1980, a pair of large elephant tusks was removed from the Old Adobe Club, a private club in Tucson, Arizona. A few weeks later, a number of valuable art objects, including several oriental rugs, were taken from Oriental Accents, an antique store in Tucson. The government's theory at trial was that Basile stole these items, transported them to Chicago, and sold them to Tomasian.

The key government witness was a paid informant, Salvatore Romano. Romano testified that he and Basile had burglarized the Old Adobe Club and Oriental Accents. Romano also testified that he and Basile had previously committed other burglaries together and, at the time of the Tucson burglaries, had an arrangement with a fence, Rick Price, whereby Romano and Basile would steal art objects and Price would have an option to buy them.

Price also testified. He confirmed the arrangement between the three men and corroborated Romano's testimony that in the spring of 1980, prior to the Tucson burglaries, Romano and Basile had stolen art objects from two homes in Las Vegas, which art Price then purchased.

Further testimony from Romano and Price revealed that Basile had to transport and find a new buyer for the items stolen in Tucson because Price only bought a few of them. Basile rented a trailer in his own name, and Romano and Basile brought the tusks and most of the rugs to Chicago. In Chicago, Romano and Basile met with Tomasian. Romano told Tomasian that the goods were for sale but were "hot in Arizona." Tomasian bought all the goods, including the tusks and rugs, for $7,000.

Tomasian, who owned an antique store, had marble bases made to hold the tusks (the original brass mounts having been left behind at the Old Adobe Club). Tomasian then consigned the tusks to a colleague in the antique business who displayed them in his store. The tusks were confiscated from that store, and four witnesses at trial identified them as the tusks formerly on display in the Old Adobe Club. A single rug found in Price's home was the only rug recovered.

At trial, Basile admitted he took the goods and transported them to Chicago but contended that the goods were not stolen. He alleged that the goods were taken with the consent of the owners pursuant to a scheme to defraud their insurers. He concluded that he did not transport, and Tomasian did not receive, stolen property since no property was stolen. In support of his theory, Basile presented evidence that the owners of the goods exaggerated their insurance claims and that the alarm systems in both buildings mysteriously malfunctioned during the burglaries (the Old Adobe Club's system was turned off completely, and the part of the system in Oriental Accents at Basile and Romano's point of entry was not functioning). Romano, Price, and the two owners all denied that the goods were taken with consent.

Tomasian joined Basile's defense and also presented two of his own. He argued the government failed to show that Tomasian knew the goods were stolen or that the tusks in evidence were the ones taken from the Old Adobe Club.

The jury returned guilty verdicts, and the trial judge entered judgment accordingly. Basile was sentenced to four years imprisonment. Tomasian received a two and one-half year sentence, the final two years suspended on condition that Tomasian be imprisoned for the first six months. Tomasian also received a five-year term of probation, to begin upon Tomasian's release, conditioned on his repayment of all delinquent taxes and his restitution of $5,000 during the probationary period. This appeal followed.

## II.

Basile argues the district court erred in admitting evidence of Basile's involvement with the two Las Vegas burglaries. He first argues that the prior acts evidence was inadmissible under the standard of Federal Rule of Evidence 404(b). Second, Basile argues that admission of the evidence of prior crimes deprived him of his right to offer his own testimony on the charged offense because he was awaiting trial on the prior crimes in another district, and he would have been forced to testify to his detriment regarding the prior crimes if he took the stand in his case. We disagree.

## A.

Evidence of other crimes or wrongful acts of a defendant is inadmissible to show the defendant was predisposed to commit the crime alleged. Fed.R.Ev. 404(b). Such evidence is admissible, however, if offered for some other purpose, such as proof of the defendant's knowledge, intent, or plan, and if its probative value outweighs possible prejudice to the defendant. Fed.R.Ev. 403 and 404(b).

These general principles have been particularized into a four-pronged test in this circuit. Evidence of prior bad acts is admissible when (1) the evidence falls under one of the exceptions of 404(b) and relates to an issue the defendant disputes, (2) the probative value of the evidence outweighs the possibility of undue prejudice, (3) the evidence is clear and convincing, and (4) the prior acts are similar enough and

recent enough to be relevant to the charged offense. *United States v. Stump,* 735 F.2d 273, 275 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 203, 83 L.Ed.2d 134 (1984).

■ Applying this test, we conclude all four factors are satisfied. First, the evidence of Basile's prior burglaries was admissible to support the government's theory that Basile had an on-going scheme to steal art objects with Romano and then sell them to Price. Since Basile attempted to disprove this theory in his defense, the issue of whether the Tucson takings were part of an on-going burglary scheme was clearly in dispute. Second, we defer to the district court's judgment that the probative value of this evidence outweighed its prejudicial impact. *See United States v. Serlin,* 707 F.2d 953, 959 (7th Cir.1983). The value of the prior crimes evidence in this case was enhanced in light of Basile's evidence indicating that the owners may have consented to the takings. Third, the evidence, coming from the months of two co-participants, was clear and convincing. Fourth, since the prior burglaries also involved art theft, the same accomplice, and the same fence, and were committed only a few months prior to the charged offenses, the crimes were similar and recent enough to be admissible.

### B.

■ We also reject Basile's argument that admission of the prior crimes evidence deprived him of his right to testify regarding the charged offense. Basile points out that at the time of trial, charges arising from the Las Vegas burglaries were pending against him in Nevada. Basile also correctly notes that if he had taken the stand to defend himself in this case after the admission of evidence of the Las Vegas burglaries, he would have opened the door to questions regarding those prior crimes. Basile argues that this dilemma of choosing to remain completely silent or to testify regarding both the Tucson and Las Vegas incidents only arose because charges were brought in different districts. Had the

charges been brought in a single district, he asserts, he could have obtained severance under Federal Rule of Criminal Procedure 14 and then could have testified regarding the transportation of stolen property charge without facing questions regarding the Las Vegas burglaries.

Basile is simply wrong. If the charges had been brought in the same district and Basile had obtained severance, he would not necessarily have been entitled to have the evidence of the other crimes excluded. If the evidence of prior crimes satisfied the standards of Federal Rule of Evidence 404(b), it would be admissible. The question of severance of counts, and the question of the admissibility of evidence of the crime alleged in one count at the defendant's trial on the other count, are separate. Fed.R.Crim.Proc. 14; Fed.R.Ev. 404(b); *See also, Holmes v. Gray,* 526 F.2d 622, 625 (7th Cir.1975), *cert. denied sub nom. Holmes v. Israel,* 434 U.S. 907, 98 S.Ct. 308, 54 L.Ed.2d 194 (1977) (joinder of charges proper where evidence of all charges would be admissible in separate trials under 404(b)). Basile is in no worse position by having two trials in different districts rather than two trials in the same district.

### III.

Basile next argues that the trial court incorrectly ruled that his proffered witness, Richard Stone, failed to qualify as an expert regarding the value of the tusks. Again, we disagree.

■ Whether a witness qualifies as an expert is committed to the sound discretion of the trial court. *Baumholser v. AMAX Coal,* 630 F.2d 550, 551 (7th Cir.1980). A party challenging either the admission or exclusion of an expert bears a heavy burden. *Id.*

■ We find no abuse of discretion by the district court in refusing to qualify Stone as an expert on the value of the tusks. Stone testified that he had no experience in appraising ivory or ivory antiques. He primarily appraised business entities.

When antiques were involved, he would contact outside appraisers for assistance. He had never before contacted an appraiser regarding ivory. Basile's offer of proof indicated that in appraising the tusks Stone consulted outside sources to ascertain the price per pound of ivory and then multiplied that figure by the weight of the tusks. On these facts, it is clear that it was not an abuse of discretion to exclude Stone.

Our conclusion in this regard is not undermined by Federal Rule of Evidence 703's explicit allowance for expert opinion based on hearsay. If Basile would have presented an expert to give an opinion based on hearsay facts, this would be a different case and Rule 703 might be implicated. Basile, however, only proffered Stone who had no expert opinion whatsoever. Stone could only relay another's opinion of the price per pound of ivory. He had no opinion of his own on that matter, on whether price per pound times weight is any measure of a tusk's value, or on any other matter concerning the valuation of antiques, much less ivory antiques. Rule 703 does not sanction the simple transmission of hearsay; it only permits an expert opinion based on hearsay.

## IV.

We also reject Tomasian's argument that the evidence supporting his conviction was insufficient to prove he knew the goods were stolen and to prove the tusks he possessed were the ones stolen from the Old Adobe Club. To successfully challenge the evidence as insufficient, Tomasian must show that, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983), *cert. denied sub nom. Strong v. United States,* 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984). Tomasian cannot meet this burden.

There was sufficient evidence at trial for a rational trier of fact to conclude that Tomasian knew the goods he bought from Romano and Basile were stolen. Romano testified that he and Basile met Tomasian in a parking lot and gave Tomasian a list of the goods they had brought from Arizona. According to Romano, he commented to Tomasian during their discussion that the goods were "hot in Arizona." Regardless of Romano's status as a government informant and the evidence of Romano's lack of credibility (including evidence that Romano had previously testified to the grand jury that he had said that the goods were "hot," rather than "hot in Arizona"), the jury was entitled to believe Romano and was not irrational in so doing. *See United States v. Fallon,* 776 F.2d 727, 733–34 (7th Cir. 1985) (testimony of government informants not *per se* unreliable).

There was also sufficient evidence for the jury to conclude that the tusks Tomasian possessed were the ones stolen from the Old Adobe Club. Four witnesses identified the tusks exhibited at trial as the ones formerly displayed in the Old Adobe Club: Romano, Price, the former club owner, and the former club manager. The government also demonstrated that the tusks fit into the brass bases used at the club and introduced photographs of the tusks into evidence. This evidence is easily sufficient to identify the tusks.

## V.

For the foregoing reasons, the judgment of the district court is hereby

AFFIRMED.