UNITED STATES of America,
Plaintiff/Appellee,

v.

Granvel E. WINDOM,
Defendant/Appellant.

No. 92–3544.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1993.

Decided March 24, 1994.

Stephen J. Liccione, Asst. U.S. Atty. (argued), Milwaukee, WI, for plaintiff-appellee.

John A. Birdsall (argued), Gonzalez & Saggio, Milwaukee, WI, for defendant-appellant.

Before CUMMINGS and CUDAHY, Circuit Judges, and LEINENWEBER, District Judge.*

LEINENWEBER, District Judge.

Granvel Windom ("Windom") was found guilty on three of four counts of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). On the remaining count, he was convicted of the lesser included offense of possession. Windom was also found guilty on one of two counts of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). On the remaining count, he was again found guilty of the lesser included offense of possession. Windom was also convicted of two of three counts of use or possession of a firearm in connection with drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1). On the remaining count, he was acquitted. Windom received a 410–month prison sentence. He appeals his convictions and his sentence.

---

* The Honorable Harry D. Leinenweber, District Judge for the Northern District of Illinois, is sitting by designation.

## I. FACTS

On March 6, 1991, Milwaukee police officers executed a search warrant at a house located at 3262A North 10th Street in Milwaukee, Wisconsin. The house belonged to Robin Windom, Windom's niece. At the time of the search, Windom was in the house along with other family members. As the officers entered the building, Windom was seen leaving a room. In this room, the police found hypodermic syringes, razor blades, and other drug paraphernalia. The officers also found a white plastic baggie containing a chunk of heroin, along with 13 individual packets of heroin. When the police patted down Windom, they found a .32 caliber loaded Derringer in his right front pants pocket and $270.00 in United States currency. Based on the evidence discovered in this search, the State of Wisconsin brought criminal charges against Windom on March 8, 1991. Windom was charged with possession of a controlled substance while armed. In the federal prosecution, the narcotics discovered in this search provided the basis for Count Six; the discovery of the Derringer provided the basis for the firearms charge in Count Nine.

On June 10, 1991, Milwaukee police officers orchestrated a controlled purchase of cocaine from the house. Before providing the money for the transaction, the officers recorded the currency's serial numbers. Later the same day, the Milwaukee police executed another search warrant. Again, Windom was present. Even though Windom said that he was unemployed, the police found $305.00 in cash on Windom's person, including a $20.00 bill from the controlled cocaine purchase.

During the search of the house, the officers recovered a 7.65 caliber semi-automatic pistol and ammunition. In one of the rooms, the police came across a backpack. In the backpack, the police found money, a loaded .22 caliber revolver, and 12 bindles of cocaine and 27 bindles of heroin. The officers also found three chunks of brown heroin and six grams of cocaine. In the kitchen, officers discovered other drug paraphernalia. They recovered inositol and mannitol, cutting agents used to dilute cocaine. The police also found foil strips used in making bindles for individual dosage units of heroin. The narcotics discovered in this search provided the basis for the narcotics charge in Counts Four and Five. The discovery of the revolver provided the basis for Count Eight.

Windom's run-ins with law enforcement did not end there. On July 11, 1991, the Milwaukee police received a report that an individual in a green Cadillac was selling drugs at 2942 North 10th Place. When the officers arrived at the scene, they found Windom behind the wheel of a green Lincoln Continental with another individual in the front passenger seat. When the police searched Windom, they found 28 bindles of heroin and two bindles of cocaine. Windom also had $326.00 in cash and a beeper. When the officers checked the beeper, it displayed the telephone number of the passenger in Windom's car. In the federal prosecution, the discovery of the drugs provided the basis for the narcotics charge in Count Three.

The original state charges brought on March 8, 1991 were dismissed, and on July 14, 1991, Windom was recharged with possession of a controlled substance while armed, along with two additional counts of possession of a controlled substance with intent to deliver. However, on July 23, 1991, these state charges were dismissed without prejudice.[1]

In the early morning hours of March 19, 1992, Windom again ran into law enforcement officers; however, this time the encounter involved agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF"). The ATF agents were looking for a fugitive. As part of their search, the ATF agents were on the alert for a specific automobile. The agents spotted this car, executed a U-turn, and came up behind the vehicle while it was stopped at a traffic light. When the light changed, the car raced off at approximately 60 to 65 miles per hour.

---

1. Windom maintains in his statement of facts that "[t]he Federal Pretrial Services Report indicates that the state charges ... were dismissed 'in lieu of federal prosecution.' " Brief for Appellant at 7. However, this fact makes no difference in the disposition of this appeal.

The chase ended when the car stopped in an enclosed parking lot. After stopping the car, the driver bent beneath the seat and ignored the agents' commands to put both hands on the steering wheel. Eventually, the driver, who turned out to be Windom, complied with the agents' directions and got out of the car.

While Windom was leaving the car, the agents noticed a piece of toilet paper fall from the door jamb area to the area between the driver's seat and the floor board. The toilet paper contained 24 bindles of heroin, some black tar heroin in chunk form, and five bindles of cocaine. The agents also found a loaded semi-automatic .9 millimeter Browning pistol protruding from underneath the seat. The agents then placed Windom under arrest. The drugs discovered in this search provided the basis for the narcotics charges in Counts One and Two. The discovery of the .9 millimeter Browning provided the basis for the weapons charge in Count Seven.

The following day, March 20, 1992, Windom faced federal charges of possession with intent to distribute heroin. The complaint arose from Windom's arrest the preceding day. On April 14, 1992, a federal grand jury returned a nine-count indictment against Windom. Windom was charged with four counts of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (Counts One, Three, Four and Six). He was charged with two counts of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts Two and Five). Finally, Windom was charged with three counts of possession of a firearm in connection with drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1) (Counts Seven, Eight and Nine). Windom moved to sever Counts One, Two and Seven from the other counts; however, the district court denied this motion. Accordingly, all counts were set for trial in one proceeding.

After a two-day jury trial, Windom was found guilty on three of the four counts of possession with intent to distribute heroin (Counts One, Three, and Four). On the remaining count (Count Six), he was found guilty of the lesser included offense of possession. The jury found Windom guilty on one of the two counts (Count Five) of possession with intent to distribute cocaine. On the remaining count (Count Two), he was found guilty of the lesser included offense of possession. Finally, Windom was found guilty on two of the three counts of use or possession of a firearm in connection with drug trafficking crimes (Counts Seven and Eight), and was acquitted on the remaining count (Count Nine).

On October 2, 1992, the district court sentenced Windom to 410 months imprisonment composed as follows. Because he was convicted of three counts of possession of heroin with intent to distribute (Counts One, Three, and Four), and one count of possession of cocaine with intent to distribute (Count Five), the district court sentenced Windom to 110 months imprisonment. Windom received twelve months for his convictions of the lesser included offenses of possession of cocaine and heroin (Counts Two and Six respectively). These sentences were to run concurrently. Windom was convicted of Counts Seven and Eight, the two counts of possession of a firearm in connection with drug trafficking crimes (18 U.S.C. § 924). For the conviction on Count Seven, the district court imposed a sentence of 60 months. For the other count (Count Eight), the district court applied the sentence enhancement provision in 18 U.S.C. § 924(c)(1). This provision provides that where there is a "second or subsequent conviction" of 18 U.S.C. § 924(c)(1), the court is to impose a sentence of 20 years, or 240 months. Accordingly, the court sentenced Windom to 240 months for his conviction on Count Eight, the second count of possession of a firearm in connection with drug trafficking.

Windom appeals his conviction and his sentence on a number of grounds. First, Windom claims that the government's 9-month delay in bringing charges prejudiced him in his defense and violated his Fifth Amendment due process rights. Second, Windom argues that the district court erred in denying his motion to sever Counts One, Two, and Seven. Third, Windom attacks his convictions on Counts One, Two, Four, Five, Seven, and Eight, claiming that the evidence was insufficient to sustain his convictions. Final-

ly, Windom makes two arguments regarding his sentence. He claims that the district court erred in construing his conviction on Count Eight as a "second or subsequent conviction" under 18 U.S.C. § 924(c)(1). He also contends that the sentence of 410 months constitutes cruel and unusual punishment in violation of the Eighth Amendment.

## II. DISCUSSION

### A. Due Process Violation from Prosecutorial Delay

Windom claims that his due process rights under the Fifth Amendment were violated when the United States Attorney's office brought the federal charges against him nine months after the last dismissal of the state charges. The statute of limitations is the primary safeguard against prosecutorial delay; however, the Due Process Clause also plays a limited role in protecting defendants from oppressive delay. *United States v. Nichols*, 937 F.2d 1257, 1260 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 989, 117 L.Ed.2d 151 (1992) (citing *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977)). This circuit has recognized two different standards for establishing a violation of due process by delay. *United States v. Koller*, 956 F.2d 1408, 1415 (7th Cir.1992); *United States v. Williams*, 738 F.2d 172, 175 (7th Cir.1984). Under one standard, the defendant must first demonstrate actual and substantial prejudice from the delay. After this showing, "the burden shifts to the government to show that the delay was necessary." *Koller*, 956 F.2d at 1415. Then, "the court must balance the prejudice from the delay against the asserted reasons for delay." *Id. See also United States v. Solomon*, 688 F.2d 1171, 1179 (7th Cir.1982).

Another line of cases applies a different standard in determining whether a due process violation has occurred. This standard derives from *United States v. DeTienne*, 468 F.2d 151 (7th Cir.1972), *cert. denied,* 410 U.S. 911, 93 S.Ct. 977, 35 L.Ed.2d 274 (1973), in which the court held that the defendants did not make out a due process violation under the Fifth Amendment because they did not show that the delay "caused substantial prej-

udice to their rights to a fair trial and that the delay was an intentional device to gain technical advantage over the accused." *Id.* at 156. This eventually evolved into the standard enunciated in *United States v. Watkins*, 709 F.2d 475 (7th Cir.1983), in which this court stated that the defendant bears the burden of proving both that "the delay caused actual and substantial prejudice to his or her fair trial rights and that the government delayed indictment for tactical advantage or some other impermissible reason." *Id.* at 479. This standard has since been applied in a number of cases. *See, e.g., United States v. Ashford*, 924 F.2d 1416, 1419–20 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 98, 116 L.Ed.2d 69 (1991); *United States v. Fuesting*, 845 F.2d 664, 669 (7th Cir.1988); *United States v. Antonino*, 830 F.2d 798, 804 (7th Cir.1987). Several panels of this court have pointed out the conflict between these two standards, but none have resolved it. *See, e.g., Koller*, 956 F.2d at 1415; *United States v. Brock*, 782 F.2d 1442, 1443 n. 1 (7th Cir.1986); *Williams*, 738 F.2d at 175. Because the result in this case would be the same regardless of which standard is applied, we need not resolve this issue now.

Under either standard, Windom must show actual and substantial prejudice from the delay. *Koller*, 956 F.2d at 1415. "The allegations of prejudice must be specific, concrete and supported by the evidence— vague, speculative or conclusory allegations will not suffice." *Fuesting*, 845 F.2d at 669. Windom asserts he was prejudiced when the federal charges were brought after a delay of nine months, arguing that his memory faded and claiming that "his ability to retrace his year old steps for purposes of trial preparation was virtually non existent [sic]." Brief for Appellant at 18. Beyond this, Windom does not allege any specific prejudice to his defense. The court has addressed this argument before and rejected it. Windom cannot demonstrate specific prejudice by merely asserting that the passage of time prevented him from reconstructing events that took place a year prior to his trial. *Watkins*, 709 F.2d at 479. Windom's concern that his memory might have faded "is insufficient to

establish that the delay impaired his defense." *Brock,* 782 F.2d at 1447. Consequently, the court concludes that Windom has failed to show prejudice and finds that no due process violation occurred as a result of the delay.

### B. Joinder and Severance

Windom argues that the district court improperly joined Counts One, Two, and Seven with the other counts. Windom also contends that the district court erred in denying his motion to sever Counts One, Two, and Seven from the other counts. However, before a court "can examine whether the counts should have been severed, [it] must determine whether they were properly joined." *United States v. Donaldson,* 978 F.2d 381, 391 (7th Cir.1992).

### 1. Joinder

■ Rule 8(a) of the Fed.R.Crim.P. governs joinder of offenses and provides in relevant part that:

[t]wo or more offenses may be charged in the same indictment or information ... if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting part of a common scheme or plan.

Whether joinder is proper is a question of law which the court reviews *de novo. Donaldson,* 978 F.2d at 391. This case presents two questions: (1) whether the drug charges in Counts One and Two were properly joined with the other drug counts, and (2) whether the gun charge in Count Seven was properly joined with the other drug counts.

### a. The Drug Charges in Counts One and Two

■ Windom contends that the charges of possession with intent to distribute cocaine and heroin in Counts One and Two were improperly joined. Counts One and Two arose from the events that occurred on March 20, 1992, when Windom was involved in a high-speed chase with ATF agents. Windom argues that the circumstances surrounding his arrest on that date were substantially different from the remaining counts of the indictment and, thus, the district court erred in permitting joinder.

■ However, this court has held that where the crimes are the same or of similar character and the elements to be proved in each count are the same, these similarities permit the joinder of the offenses. *Donaldson,* 978 F.2d at 391, *citing United States v. Archer,* 843 F.2d 1019, 1021 (7th Cir.1988), *cert. denied,* 488 U.S. 837, 109 S.Ct. 100, 102 L.Ed.2d 76 (1988). In this case, the crimes in Counts One and Two were exactly the same as those alleged in the other drug counts. Naturally, the elements to be proved for each count of possession with intent to distribute cocaine and each count of possession with intent to distribute heroin were precisely the same. Consequently, the court finds that the district court did not err in joining Counts One and Two with the remaining narcotic offenses alleged in the other counts.

### b. The Gun Charge in Count Seven

■ Windom also contends that the district court improperly joined the gun charge in Count Seven with the drug counts. The firearm violation in Count Seven arose from the search of Windom's car after the high-speed chase on March 20, 1992. During the search of the car, the ATF agents found heroin, cocaine, and a .9 millimeter Browning pistol. Under Fed.R.Crim.P. 8(a), offenses may be joined if they are based on "two or more acts or transactions connected together or constituting part of a common scheme or plan." "Two crimes are 'connected together' if the proof of one crime constitutes a substantial portion of the proof of the other." *United States v. Montes–Cardenas,* 746 F.2d 771, 776 (11th Cir.1984). Joint trials in these circumstances obviate the need for the government to make duplicate offers of proof, and allow the accused to avoid the inconvenience of two separate trials. *Id.* In this case, the firearms violation and the narcotics charges were connected together and properly joined. Windom was charged with carrying a firearm in violation of 18 U.S.C. § 924(c)(1) which provides in relevant part: "Whoever, during and in relation to any crime of violence or drug trafficking ... uses

or carries a firearm, shall ... be sentenced to imprisonment for five years." As is evident from the statute's plain language, proof of a crime of drug trafficking is substantial proof of a violation of the statute.

Moreover, the fact that guns are tools for the execution of drug trafficking crimes provides an additional basis for concluding that the gun charge was properly joined with the drug charge. *Id.* at 776–77. In *Montes–Cardenas*, the court reasoned that a gun charge was properly joined with a drug charge for the same reasons that allow the government to introduce weapons into evidence at drug trials. *Id.* at 776. The court stated that "[e]xperience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment, and other narcotic equipment." *Id.* at 777 (*quoting United States v. Perez,* 648 F.2d 219, 224 (5th Cir. 1981), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (citation omitted)). Consequently, the court in *Montes–Cardenas* concluded that joinder of a weapons offense with drug charges is proper under Rule 8(a), especially when the weapons and drugs are found in the same search. *Id.* at 777. This is precisely the case here; the gun and the drugs were found in the same search of Windom's automobile. Therefore, the court rules that the district court did not err in joining Windom's gun offense with the narcotics charges.

### 2. Severance

▮▮▮ Windom further contends that the joinder was prejudicial and that the district court erred in denying his motion to sever Counts One, Two, and Seven. The proper remedy for prejudicial joinder is severance under Fed.R.Crim.P. 14. *United States v. Lane,* 474 U.S. 438, 447, 106 S.Ct. 725, 731, 88 L.Ed.2d 814 (1986). The appellate court reviews the district court's decision on a severance motion for an abuse of discretion. *United States v. Peters,* 791 F.2d 1270, 1287 (7th Cir.1986), *cert. denied, Odoner v.*

*United States,* 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106; *United States v. Gironda,* 758 F.2d 1201, 1220 (7th Cir.1985), *cert. denied, Spiess v. United States,* 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456. There are different formulations in determining when a district court abuses its discretion and what a defendant needs to show in order to challenge on appeal a district court's refusal to grant a severance motion. In *United States v. Rogers,* 475 F.2d 821 (7th Cir.1973), the court held that the trial court is to look at "possible prejudice" to the defendant: "[t]he trial court is to balance possible prejudice to the defendant from joinder with the public interest in efficient use of judicial time through joint trial of defendants and offenses which are connected." *Id.* at 828. In addressing prejudice to the defendant, the court in *Rogers* made a distinction between cases where the defendant seeks severance of counts when there are multiple defendants and cases where the defendant seeks severance counts when he is the sole defendant. The court observed that "[i]n a case involving multiple defendants ... the showing needed for severance appears to be stronger than in a case of a single defendant with multiple counts." *Rogers,* 475 F.2d at 828.

▮▮▮ When a defendant challenges the district court's ruling on appeal, some cases require that the defendant show "actual prejudice" resulting from the denial. *United States v. Cochran,* 955 F.2d 1116, 1120 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 460, 121 L.Ed.2d 368 (1992); *United States v. Emond,* 935 F.2d 1511, 1514 (7th Cir.1991). Others require a showing of "substantial prejudice." *See United States v. Harris,* 761 F.2d 394, 401 (7th Cir.1985). Combining the formulations of these two cases, another case requires the defendant to suffer "substantial actual prejudice and to receive an unfair trial."[2] *Peters,* 791 F.2d at 1287. Another case requires a "strong showing of prejudice." *United States v. Craig,* 573 F.2d 455, 480 (7th Cir.1977), *cert. denied, North v. United States,* 439 U.S. 820, 99 S.Ct. 82, 99 S.Ct. 83, 58 L.Ed.2d 110 (1978). Whatever the exact formulation, it is clear

---

**2.** These should not be viewed as two separate requirements; presumably a defendant who suf-

fers substantial actual prejudice does not receive a fair trial.

that, as the *Cochran* court put it, "a defendant must show that he was unable to obtain a fair trial without the severance." 955 F.2d at 1120 (*citing United States v. Atterson*, 926 F.2d 649, 658 (7th Cir.1991), *cert. denied, Laurelez v. United States*, —— U.S. ——, 111 S.Ct. 2909, 115 L.Ed.2d 1072 (1991)). *See also Craig*, 573 F.2d at 480. This court has rarely reversed a trial judge's refusal to sever. *United States v. Velasquez*, 772 F.2d 1348, 1352 (7th Cir.1985), *cert. denied*, 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986).

Windom asserts that he was prejudiced, claiming that the district court's failure to sever Counts One, Two, and Seven allowed the jury to infer from the evidence of the crimes charged in the other counts that he had a criminal disposition. He also asserts that the jury cumulated evidence of the various alleged crimes to find him guilty on Counts One, Two, and Seven, and argues that this would not have occurred had the evidence of each alleged crime been considered singly. However, Windom's arguments ignore the fact that even if he were able to have Counts One, Two, and Seven severed, he would not necessarily have been entitled to have the evidence of the other crimes excluded. *United States v. Tomasian*, 784 F.2d 782, 785 (7th Cir.1986). The "question of severance of counts, and the question of the admissibility of evidence of the crime alleged in one count at the defendant's trial on the other count, are separate." *Id.* (*citing* Fed.R.Evid. 404(b)).

Consequently, "prejudice requiring severance is not shown if evidence on the severed counts would be admissible in the trial of the remaining counts." *Rogers*, 475 F.2d at 828. On the admissibility question, this court has held that "[e]vidence of a prior drug transaction is admissible under [Federal Rule of Evidence] 404(b) to show a defendant's intent to take part in a conspiracy, his opportunity to acquire and distribute cocaine, and his knowledge of the distribution network." *United States v. Cooper*, 942 F.2d 1200, 1205 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1303, 117 L.Ed.2d 524 (1992) (*citing United States v. Shukitis*, 877 F.2d 1322, 1329 (7th Cir.1989). Accordingly, it was not an abuse of discretion to deny Windom's severance motion.

## C. Sufficiency of the Evidence

Windom claims that his convictions on Counts One, Two, Four, Five, Seven, and Eight were not based on sufficient evidence. "In reviewing a sufficiency challenge, '[t]he test is whether, after viewing the evidence in the light most favorable to the government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." '" *United States v. Edun*, 890 F.2d 983, 986 (7th Cir.1989) (*quoting United States v. Pritchard*, 745 F.2d 1112, 1122 (7th Cir.1984) (*in turn quoting Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)).

### 1. Sufficiency of the Evidence in Counts One, Two, and Seven

■ Windom attacks the sufficiency of the evidence linking the .9 millimeter Browning pistol found underneath his car seat and the narcotics found in the toilet paper after the high-speed chase on March 19, 1992. Windom claims that his convictions on Counts One, Two, and Seven must be reversed. However, he presents no argument and cites no authority relating to the sufficiency of the evidence supporting his narcotics convictions (Counts One and Two). On several occasions, the Seventh Circuit has warned that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991); *see also United States v. Brown*, 899 F.2d 677, 679 n. 1 (7th Cir.1990); *United States v. Petitjean*, 883 F.2d 1341, 1349 (7th Cir.1989); *United States v. Williams*, 877 F.2d 516, 518–19 (7th Cir.1989), *cert. denied*, 493 U.S. 863, 110 S.Ct. 180, 107 L.Ed.2d 136 (1989); Fed.Rule. App.P. 28(a)(4). Accordingly, Windom's claim of insufficiency of the evidence is waived as it relates to Counts One and Two.

■ With regard to Count Seven, Windom makes two arguments. First, he contends that the evidence connecting the

gun and the narcotics was insufficient. Second, he argues that the evidence connecting him to the gun found under his seat was insufficient. Under 18 U.S.C. § 924(c), the government must prove beyond a reasonable doubt that the defendant used or carried the firearm and that this use or carrying of the firearm was during and in relation to a crime of violence or a drug trafficking offense. *Edun,* 890 F.2d at 986. The defendant need not brandish or discharge his gun in order to "use" it within the meaning of section 924(c). *United States v. Rosado,* 866 F.2d 967, 969 (7th Cir.1989). A defendant "uses" a firearm when he possesses the firearm in any manner that facilitates the execution of a felony. *United States v. Ocampo,* 890 F.2d 1363, 1371 (7th Cir.1989). Specifically, in a drug transaction, a defendant "uses" a firearm under the statute if it increases the likelihood of success of the drug offense as a means of protection or intimidation. *United States v. Vasquez,* 909 F.2d 235, 239 (7th Cir.1990).

Windom claims that it is mere speculation that the gun belonged to him because the government never determined the ownership of the gun or the car. However, Windom cites no authority for this proposition. In fact, this court has found that in cases such as these, "[l]egal ownership [is] not the key factor. Actual control [is] the key fact...." *United States v. Rush,* 890 F.2d 45, 51 (7th Cir.1989). In firearm cases such as these, this court has primarily concerned itself with the issue of whether "[t]he weapon, by 'providing the defendant with security and confidence, facilitated the narcotics transaction.'" *Ocampo,* 890 F.2d at 1371 (*quoting United States v. Diaz,* 864 F.2d 544, 549 (7th Cir. 1988), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989)). In this respect, this court has held that a firearm facilitates a narcotics transaction by "emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or to intimidate others, whether or not such a display or discharge in fact occurred." *Ocampo,* 890 F.2d at 1371 (*quoting United States v. Stewart,* 779 F.2d 538, 540 (9th Cir.1985), *cert. denied,* 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987)).

Accordingly, in cases (such as the two that follow) which involved facts basically indistinguishable from those in the instant case, this court has ruled that the defendants in question "used or carried" a firearm in violation of the statute. In *United States v. Garrett,* 903 F.2d 1105 (7th Cir.1990), *cert. denied,* 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990), the defendant was seen with the keys to a car trying to open the door. *Id.* at 1111. The car contained a bag of packaged cocaine and a weapon under the driver's seat. *Id.* In *Ocampo,* two defendants were seen getting into a car with a bag of cocaine. *Id.* 890 F.2d at 1366. When law enforcement officers approached the car, one of the defendants was seen trying to kick an object under the seat. *Id.* From under this seat, the officers recovered a loaded revolver. *Id.* In both cases, this court held that the evidence was sufficient to support a finding that the defendant "used or carried" the firearm in violation of 18 U.S.C. § 924(c)(1). *Id.* at 1372, *Garrett,* 903 F.2d at 1111.

The evidence against Windom is essentially identical. After a high-speed chase, Windom was observed bending beneath his seat. After he opened the car door to get out, toilet paper containing packages of heroin and cocaine fell out. A search of the car revealed a loaded .9 millimeter pistol under the driver's seat where Windom was seen bending down. Clearly, in light of the prevailing standard in this circuit, the evidence was sufficient to support Windom's conviction on Count Seven.

### 2. Sufficiency of the Evidence in Counts Four, Five, and Eight

Windom attacks the sufficiency of the evidence of his narcotics convictions and his firearm violation in Counts Four, Five, and Eight. Windom's narcotics convictions in Counts Four and Five will be addressed first. To sustain a conviction under 21 U.S.C. § 841(a)(1), the government must show that: (1) the defendant knowingly or intentionally possessed cocaine; (2) he possessed cocaine with the intent to distribute it; and (3) he knew that the substance was a controlled substance. *United States v. Troop,* 890 F.2d 1393, 1398 (7th Cir.1989).

The government does not argue that Windom had actual possession of the narcotics; his convictions rest upon whether he had constructive possession of them. *See United States v. Soto–Lopez*, 995 F.2d 694, 699 (7th Cir.1993).

■ The rule of constructive possession holds that a person can be convicted for possessing drugs although he does not possess them in a literal sense. *United States v. Martinez*, 937 F.2d 299, 305 (7th Cir.1991). "The doctrine creates a legal fiction to take care of such cases as that of a drug dealer who operates through hirelings who have physical possession of the drugs." *United States v. Manzella*, 791 F.2d 1263, 1266 (7th Cir.1986).

"To establish constructive possession the government must demonstrate that the defendant was able and intended to exert control over the narcotics...." *United States v. Salazar*, 983 F.2d 778, 782 (7th Cir.1993). However, under the rule of constructive possession, courts attempt to distinguish the possessor from the ordinary bystander. *See United States v. Phillips*, 496 F.2d 1395, 1397 (5th Cir.1974), *cert. denied*, 422 U.S. 1056, 95 S.Ct. 2680, 45 L.Ed.2d 709 (1975) (attempting to separate knowing possession from guilt by association by distinguishing the "non-explaining possessor" from the "incredible non-possessor"). Consequently, "mere proximity to the drug[s], mere presence on the property where [the drugs are] located, or mere association ... with the person who does control the drug[s] or the property on which [they are] found, is insufficient to support a finding of possession." *United States v. Di-Novo*, 523 F.2d 197, 201 (7th Cir.1975), *cert. denied*, 423 U.S. 1016, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975).

■ When the crime involves an intent to distribute or dispense drugs, this court has found that an accused only has control of narcotics when he has the authority—not legal authority, but "the recognized authority in his criminal milieu," *Manzella*, 791 F.2d at 1266—to possess and determine the disposition of them. *See, e.g., Manzella*, 791 F.2d at 1266.

Though the prosecution may rely on a piece of evidence that shows both the defendant's property interest and his right of access to the property and drugs, this does not obviate the requirement that there be some kind of evidence showing the defendant's authority with respect to the drugs. For example, in *United States v. Herrera*, 757 F.2d 144 (7th Cir.1985), the defendant was observed driving up to a house, entering the house, and then fifteen minutes later leaving the house with a brown paper bag. *Id.* at 147. The defendant got into his car and drove off. *Id.* Officers on the scene stopped the defendant and discovered that the bag contained brown heroin. *Id.* Later, a search of the house uncovered a foot locker with several packages of brown heroin, drug paraphernalia, and several documents, including the registration receipt for the car which the defendant had been driving. *Id.* In addition to being convicted for the heroin in the brown bag, the defendant was convicted of possessing the heroin from the foot locker with intent to distribute. *Id.*

This court reversed the conviction as to the heroin from the foot locker. *Id.* at 151. Although the defendant had access to the house, the court did not find sufficient evidence of his authority with respect to the heroin in the foot locker. *Id.* at 150. No key was discovered during the search of the house. *Id.* The foot locker was found in the laundry room and could only be seen from inside the room. *Id.* The foot locker was locked and had to be forced open. *Id.* The defendant's fingerprints were not found on the foot locker or any of its contents. *Id.* There was no showing that the heroin found on the defendant's person came from this foot locker; the purity of the heroin seized from the defendant was different than the heroin found in the foot locker. *Id.* The only certainty was that the foot locker was in the house when the defendant picked up the heroin. *Id.* This alone did not show any authority on the part of the defendant in determining the disposition of the drugs in the foot locker. *Id.*

Based on the standard set by *Herrera*, the court rules that the evidence in this case is insufficient to support Windom's convictions

insofar as they are premised upon his possession of the narcotics in the backpack found at 3262A North 10th Street. There is simply no evidence that Windom had the requisite authority to determine the disposition of the drugs found in the backpack. Windom was present in a house where a backpack was discovered containing heroin and cocaine and, although he was never seen with drugs, he possessed a $20.00 bill from a controlled buy. However, as in *Herrera,* the narcotics from the controlled buy were not linked in any way to the narcotics in the backpack. Therefore, the evidence is insufficient to support Windom's convictions on Counts Four and Five.

The possession of the marked bill might justify the inference that Windom controlled the drugs that were sold to the officers if the government put on evidence that Windom was entitled to the money as his share in the drug transaction. *See United States v. Molinaro,* 877 F.2d 1341, 1348–49 (7th Cir.1989). Arguably, the government could then demonstrate Windom's authority over the drugs in the backpack if it could show that the drugs from the controlled buy came from the backpack. *See Herrera,* 757 F.2d at 150 (link demonstrated by a showing of similar purity between the two quantities of narcotics).

However, there is no evidence to support these inferences, and the government has not attempted to prove possession in this way. As this court has stated before, Robert Frost's "The Road Not Taken" delivers the proper message for appellate review of criminal cases. *Salazar,* 983 F.2d at 781. We might see the drugs and Windom crossing paths if we could follow how the marked bill eventually found its way into Windom's pocket. However, the court will not allow speculation to substitute for proof by inferring from Windom's possession of the marked bill his constructive possession of the narcotics in the backpack. *See United States v. Landry,* 257 F.2d 425, 431 (7th Cir.1958).

The government argues that Windom's possession of the marked bill, when coupled with the presence of drugs, drug paraphernalia, and guns in an otherwise unoccupied house, demonstrates that he was dealing drugs from that house. However, the government does not cite any authority for this proposition. Moreover, no precedent in this circuit supports such a conclusion.

Regarding the firearm violation alleged in Count Eight, the government argues that Windom used the gun found in the house to protect the narcotics in the backpack. Brief for Appellee at 21. Because the derivative firearm conviction in Count Eight was tied only to Counts Four and Five, it also must be reversed. *United States v. Lamon,* 930 F.2d 1183, 1193 (7th Cir.1991). Since the court hereby reverses three of Windom's convictions, this case is remanded to the district court for resentencing.[3] *See Manzella,* 791 F.2d at 1270.

### III. CONCLUSION

For the above reasons, Windom's convictions in Counts One, Three, and Six are affirmed. Windom's firearm violation in Count Seven is also affirmed. Windom's convictions of possession of heroin and cocaine with intent to distribute in Counts Four and Five are reversed, as is his firearm violation in Count Eight. The court remands this case to the district court for resentencing.

AFFIRMED IN PART, REVERSED IN PART

---

**3.** Because the court is remanding this case, it need not reach Windom's arguments regarding

sentencing. *See United States v. Sullivan,* 903 F.2d 1093, 1099 n. 5 (7th Cir.1990).