70 F.3d 1275
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony S. PEEPLES, Defendant-Appellant.
 No. 95-1634.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 14, 1995.
Decided Nov. 27, 1995.
Rehearing Denied Jan. 2, 1996.
 
 Before CUMMINGS, BAUER and ESCHBACH, Circuit Judges.
 
 ORDER
 
 1
 A jury convicted Anthony Peeples of possession of a controlled substance (cocaine base, or "crack") with intent to distribute, in violation of 21 U.S.C. Secs. 841(a)(1), (b)(1)(B);[1] of using or carrying a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. Sec. 924(c)(1); and of possession of an unregistered firearm, in violation of 26 U.S.C. Sec. 5861(d). Peeples directly appeals his convictions under Counts 1 and 2. We affirm.
 
 
 2
 * In the early afternoon on August 8, 1994, Sergeant James Bridges and Officer Timothy J. Anderson of the Peoria Police Department observed five men, one of whom was Anthony Peeples, standing outside an apartment in the Warner Homes Housing Project. One of the men fled, and the officers took another into custody regarding an unrelated incident. The officers recognized Peeples as someone who had been living in the apartment for over a year with his girlfriend Jocelyn Paskins. Officer Anderson asked Peeples if there were any guns or drugs in the apartment. Peeples said no, but consented to the officer's request to enter and look around.
 
 
 3
 Anderson immediately uncovered two loaded revolvers, one underneath the cushions of each of two couches just inside the apartment door. Peeples denied that the handguns were his. Anderson then entered the bedroom and lifted Peeples's jacket from the bed. A .12-gauge sawed-off shotgun with a twelve-inch barrel fell out. It was later found to be fully loaded with five rounds. A search of the nightstand at the foot of the bed revealed $349 in cash and a cigarette package containing 31 individually wrapped "rocks" of cocaine base, weighing in sum 7.4 grams.
 
 
 4
 Jocelyn Paskins testified at trial that on the morning of the arrest, she found Peeples's friend, Juan Brown, sleeping on one of the couches. As she was getting dressed, she found the money and cocaine base in the nightstand.[2] She testified that she did not know where the drugs had come from, but that she told Peeples, who was still half asleep in bed, to get them out of the apartment. He said, "Okay." Paskins asked if she could take $10 from the nightstand to go job-hunting, and Peeples told her yes. At trial, she also stated that she had seen Peeples in possession of the sawed-off shotgun shortly before the arrest.
 
 
 5
 The government called an expert witness, Special Agent David Hirtz of the FBI. Agent Hirtz opined that based on the quantity and packaging of the cocaine base, and on the locations of the handguns, the shotgun, and the money, that the cocaine base found in the nightstand was possessed for the purposes of distribution. Hirtz testified that the leather jacket wrapped around the shotgun was of a type often used by drug traffickers to carry the weapon concealed. He also stated that based on his knowledge of cocaine base trafficking in Peoria, the "triad" of drugs, money, and guns in close proximity is a common feature of distribution operations.
 
 
 6
 The jury convicted Peeples on all counts of the indictment. Peeples advances two arguments on appeal, both of which address the sufficiency of the evidence. First, he argues that the evidence was insufficient to prove the element of possession to support a conviction on Count 1 because more than one person was present in the apartment before the search and someone else could have exercised control over the drugs found in the bedroom. Second, he argues that the evidence was insufficient to support a conviction on Count 2, that he used or carried a firearm in relation to a drug trafficking offense.
 
 II
 
 7
 In evaluating an appeal challenging the sufficiency of the evidence, we consider all the evidence and all reasonable inferences that can be drawn from the evidence in the light most favorable to the government. United States v. Jairo Soto-Rodriquez, 7 F.3d 96, 99 (7th Cir.1993). We must then affirm the verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." Brandom v. United States, 431 F.2d 1391, 1400 (7th Cir.1970), cert. denied, 400 U.S. 1022 (1971); see also United States v. Crowder, 36 F.3d 691, 695 (7th Cir.1994) (citing cases), cert. denied, 115 S.Ct. 1146 (1995).
 
 
 8
 In order to establish a violation of 21 U.S.C. Sec. 841(a)(1),[3] possession of a controlled substance with intent to distribute, the government must prove beyond a reasonable doubt that the defendant: (1) knowingly or intentionally possessed a controlled substance; (2) possessed it with the intent to distribute; and (3) knew it was a controlled substance. United States v. Windom, 19 F.3d 1190, 1199 (7th Cir.), cert. denied, 115 S.Ct. 174 (1994). Peeples argues that the evidence at trial failed to establish the first element of the offense, possession.
 
 
 9
 The government can establish the possession element circumstantially by showing that defendant had "constructive" possession of the drugs, where the evidence sufficiently demonstrates ownership, dominion, or control. United States v. Hernandez, 13 F.3d 248, 252 (7th Cir.1994). Where the defendant does not exercise exclusive control of the drugs, the government must distinguish him from a mere bystander by establishing a nexus between the accused and the contraband. Id.; United States v. Galiffa, 734 F.2d 306, 316 (7th Cir.1984). Thus in a non-exclusive possession situation, the defendant's proximity to the drugs, presence on the property where the drugs are located, or association with the person who controls the drugs is insufficient, standing alone, to support a finding of possession. Windom, 19 F.3d at 1200.
 
 
 10
 As he did at trial, the defendant points out that on the night and morning before the drugs were discovered, the apartment was occupied by three people who might have possessed the drugs: Jocelyn Paskins, Juan Brown, and Peeples himself. He then argues that the government "must show that Peeples was responsible for the presence of the drugs in the apartment or that there was some act, word or conduct indicating his interest or stake in the crack." (Defendant's Brief at 18.) He relies for authority on a partial dissent in United States v. Davis, 562 F.2d 681, 695-96 (D.C.Cir.1977) (Bazelon, J., concurring and dissenting) (government must show defendant was "responsible for the presence" of the drugs), and on a decision of the D.C.Circuit in United States v. Pardo, 636 F.2d 535, 549 (D.C.Cir.1980) (government must show "some action, some word, of some conduct" that links the individual to the drugs).
 
 
 11
 Even if Pardo and the partial dissent in Davis were authoritative in this circuit, neither supports Peeples's position. They are entirely consistent with this court's nexus requirement that the government prove defendant's ability to exercise control over the drugs. The principle, as stated above, is that where the defendant is not in exclusive possession of the drugs, the government must produce "something more" to link the defendant to the drugs. Nexus does not mean, as the defendant appears to suggest, that the government must show who brought the drugs to the place where they were found.
 
 
 12
 To rebut the government's evidence of nexus, Peeples argues that the Paskins testimony was incredible as a matter of law and could not be relied upon. As Peeples pointed out to the jury, Paskins testified at trial that she saw the drugs in the nightstand, yet she earlier told Sergeant Bridges that she had seen no drugs that morning. Credibility determinations are the province of the jury, United States v. Campbell, 985 F.2d 341, 344 (7th Cir.1993), and for a witness's testimony to be held incredible as a matter of law, "it must have been either physically impossible for the witness to observe that which he or she claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." United States v. Dunnigan, 884 F.2d 1010, 1013 (7th Cir.1989). "Mere inconsistencies in the witness' testimony do not render it legally incredible." Id.
 
 
 13
 If anything, Jocelyn Paskins was motivated to lie in Peeples's favor; he was the father of her child and she stated at trial that she still cared for him. She testified that she had communicated with him by letter and telephone shortly before trial, and that she appeared only because the government subpoenaed her. The single inconsistency as to whether she saw drugs in the nightstand does not render her testimony incredible as a matter of law. Most importantly, Peeples has not shown that the substance of her testimony was either impossible for her to have observed or impossible to have taken place. The jury was therefore entitled to consider her testimony and to give it whatever weight the jury thought appropriate.
 
 
 14
 There was ample evidence that connected Peeples to the cocaine base, dispelling the ambiguity from his non-exclusive occupancy of the apartment. Viewing the evidence in the light most favorable to the government, a reasonable jury could have easily concluded that he was in possession of the cocaine found in the nightstand. Government witnesses testified that Peeples resided in and had keys to the apartment. He slept in the bedroom, a few feet from the drugs in the nightstand. Paskins shared the use of the nightstand with him, and recognized his joint authority over its contents by asking if she could take $10. Upon discovering the drugs, she told him to get rid of them and he said "okay." The drugs were also found next to the money and the sawed-off shotgun, which on appeal Peeples has effectively conceded he possessed. (See Appellant's Brief at 31.) As Agent Hirtz testified for the government, guns, money, and drugs in close proximity form a "triad" common to much of the drug trafficking in Peoria.
 
 
 15
 Although there may be other plausible explanations for the presence of the cocaine base, the jury evidently rejected them. Moreover, the government's evidence supporting a conviction need not exclude every hypothesis of innocence; it must only support a conclusion of guilt beyond a reasonable doubt. See, e.g., United States v. Campbell, 985 F.2d 341, 345 (7th Cir.1993). On appeal, it is the defendant's burden to show otherwise. Considering the evidence in its totality, a reasonable jury could have concluded Peeples exercised authority over the drugs in the drawer.
 
 
 16
 Peeples's other arguments on appeal concern his conviction under 18 U.S.C. Sec. 924(c)(1), using or carrying a firearm in relation to a drug trafficking offense.[4] To sustain a conviction under this section, the government must prove: (1) that the defendant used or carried a firearm; and (2) that the use or carrying was during and in relation to a drug trafficking offense. United States v. Woods, 995 F.2d 713, 718 (7th Cir.1993). In a drug transaction, a defendant "uses" a firearm within the meaning of the statute when the weapon is possessed for the purpose of facilitating the drug trafficking offense, whether as a means of security, protection, or intimidation, regardless of whether it is actually brandished or discharged. United States v. Vasquez, 909 F.2d 235, 239 (7th Cir.1990), cert. denied, 501 U.S. 1217 (1991).
 
 
 17
 In this case, the government proved the predicate drug trafficking offense by securing a conviction on Count 1 of the indictment, possession of a controlled substance with intent to distribute. Furthermore, Peeples has effectively conceded on appeal the first element of a violation of 18 U.S.C. Sec. 924(c)(1), that he possessed the firearm. Therefore, the government's only remaining burden was to show the second element of a violation, that Peeples's possession of the firearm was "in relation to" the drug trafficking offense.
 
 
 18
 "Evidence that a firearm was in proximity and available for protection during the course of a narcotics offense is sufficient" to prove that the weapon was used "in relation to" the criminal act. United States v. Edwards, 36 F.3d 639, 644 (7th Cir.1994) (citing United States v. Carson, 9 F.3d 576, 582 (7th Cir.1993), cert. denied, 115 S.Ct. 135 (1994)). The firearm need not be found on or near the defendant. See United States v. Rosado, 866 F.2d 967, 969 (7th Cir.1989). "Dealers who keep guns in strategic proximity to their drugs or transactions use them in relation to their drug trafficking for purposes of [section 924(c)(1) ]."[5] United States v. Woods, 995 F.2d 713, 718 (7th Cir.1993) (internal quotation marks omitted).
 
 
 19
 The defendant argues that the government impermissibly relied on a "fortress theory" to prove that the sawed-off shotgun was possessed in relation to the drug trafficking offense. In the fortress theory line of cases, other circuits have held that numerous firearms found in heavily guarded and protected "drug fortresses" are "used in relation to" drug trafficking because they are presumed to provide protection to the drug traffickers who could anticipate a raid by rivals or police. See, e.g., United States v. Wilson, 884 F.2d 174, 177 (5th Cir.1989). Peeples argues that the government implicitly relied on the presence of the handguns in the living room sofas, which were never proven to belong to Peeples, as part of this supposed fortress theory.
 
 
 20
 The fortress theory is not, however, specifically recognized in this circuit, see United States v. Malin, 908 F.2d 163, 168 (7th Cir.) (multiple weapons in strategic proximity to large quantities of drugs supports Sec. 924(c)(1) conviction; citing Wilson as example), cert. denied, 498 U.S. 990 (1990), and the government did not purport to rely upon it. Moreover, the fortress theory is merely one method of inferring a relationship between firearm possession and a drug trafficking offense. This circuit already requires strategic proximity, as opposed to mere proximity, between the weapons and drugs to demonstrate that relationship.
 
 
 21
 Viewing the evidence in the light most favorable to the government, there was sufficient evidence for a reasonable jury to find that the sawed-off shotgun was possessed in relation to Peeples's drug trafficking offense. It was discovered within several feet of the drugs in the nightstand, fully loaded and concealed in Peeples's jacket. It would be reasonable to conclude that it provided Peeples with a sense of security in his illicit activity and that it was available for protection of the valuable drug cache. As such, it would be reasonable for the jury to conclude that its presence facilitated the underlying drug trafficking offense.
 
 
 22
 Accordingly, the judgment of the trial court is AFFIRMED.
 
 
 
 [1]
 Section 841(a)(1) criminalizes possession of a controlled substance, and section 841(b)(1)(B) sets the mandatory penalty for possession for a specific quantity (in this case, five grams or more of a mixture containing cocaine base). The district court judgment only indicates that Peeples was convicted under section 841(b)(1)(B). Both sections should be cited
 
 
 [2]
 Sergeant Bridges testified that Paskins denied having seen drugs in the nightstand when he interviewed her shortly after the arrest, on August 11, 1994
 
 
 [3]
 21 U.S.C. Sec. 841(a)(1) provides: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance...."
 
 
 [4]
 18 U.S.C. Sec. 924(c)(1) provides in relevant part:
 Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, to imprisonment for ten years....
 Peeples's conviction under this section resulted in an additional ten years on his sentence.
 
 
 [5]
 The Supreme Court has granted certiorari in a consolidated appeal from the D.C. Circuit that may give it an opportunity to reformulate the test used to determine the sufficiency of the evidence presented to support a conviction for using or carrying a firearm in relation to a drug trafficking offense. See United States v. Bailey, 36 F.3d 106 (D.C.Cir.1994) (en banc), cert. granted, 115 S.Ct. 1689 (1995). The Bailey petitioners, two defendants convicted under section 924(c)(1), argue that the word "use" should be construed to encompass only "active" use of a firearm, as indicated by actual handling of the firearm or factors such as whether the weapon was loaded, the type of weapon, and the use of expert testimony to support the government's theory of use. We note that even if the Court adopts the somewhat restrictive multifactorial test urged by the Bailey petitioners, the array of evidence admitted in this case would still suffice to support a conviction. As discussed in the facts, Peeples's weapon was fully loaded, it was of a type often used in drug transactions, it was strategically placed near the drugs, and the government employed expert testimony to substantiate its theory of use